**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KENNITH SHROYER,
          *Plaintiff-Appellant,*

v.

NEW CINGULAR WIRELESS SERVICES,
INC.; AT&T CORPORATION,
          *Defendants-Appellees.*

No. 08-55028

D.C. No.
CV-06-01792-R

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
April 13, 2009—Pasadena, California

Filed May 26, 2010
Amended September 20, 2010

Before: William C. Canby, Jr., Johnnie B. Rawlinson and
N. Randy Smith, Circuit Judges.

Opinion by Judge Canby

14407

## COUNSEL

Robert K. Friedl, Kirtland & Packard LLP, El Segundo, California; William R. Weinstein, Sanford, Wittels & Heisler, LLP, New York, New York; for the plaintiff-appellant.

Steven P. Rice and Theresa C. Lopez, Crowell & Moring LLP, Irvine, California, for the defendants-appellees.

## ORDER

The opinion filed in this matter by this court on May 26, 2010, 606 F.3d 658, is amended as follows:

At 606 F.3d at 661, right column, first full paragraph: The final sentence of this paragraph (beginning "We affirm . . .") is amended to state:

We affirm the dismissal of the fraud and unfair competition claims and the dismissal of the claims for declaratory relief with regard to those claims, but we reverse the dismissal of the breach of contract claim and the claim for declaratory relief with regard to that claim.

At 606 F.3d at 667, the body of Section III, entitled "Declaratory Relief" is amended to state:

The district court's dismissal of the claims for declaratory relief appears to have depended upon its ruling dismissing all claims for substantive relief. Because we affirm the district court's dismissal of the fraud and unfair competition claims, we affirm the dismissal of the claims for declaratory relief on those claims. Because we reverse the district court's dismissal of the breach of contract claim, we also reverse the denial of declaratory relief with regard to that claim.

At 606 F.3d at 667, the first sentence of Section IV, entitled "Conclusion," is amended to state:

For the reasons above stated, we affirm the dismissal of Shroyer's common law fraud and unfair competition claims and the denial of declaratory relief with regard to those claims, and we reverse the dismissal of Shroyer's breach of contract claim and denial of declaratory relief with regard to that claim.

There are no pending petitions for panel or en banc rehearing. No subsequent petitions for panel or en banc rehearing may be filed. The mandate shall issue in due course.

The amended opinion is filed contemporaneously with this order.

**OPINION**

CANBY, Circuit Judge:

Appellant Kennith Shroyer filed a class action against New Cingular Wireless Services, Inc., a corporation resulting from the merger of AT&T Wireless Services, Inc., and Cingular Wireless Corporation. At the time of the merger in 2004, Shroyer had a contract for wireless telephone services with AT&T. He alleged that, immediately following the merger, his cellular phone service was severely degraded. He claimed that New Cingular disregarded its obligations under the existing AT&T contract by failing to provide adequate service coverage and requiring Shroyer to sign a different contract with New Cingular if he desired to get the service that AT&T had contracted to provide under the first agreement. He also claimed that New Cingular misrepresented and omitted key facts about the consequence of the merger to the Federal Communications Commission ("FCC"), and that the FCC would not have approved the merger if it had known that New Cingular planned to ignore the obligations of existing AT&T contracts. On these allegations, he made claims for 1) breach of contract; 2) fraud and deceit; 3) unfair competition under Cal. Bus. & Prof. Code §§ 17200-210; and 4) a demand for a declaratory judgment.[1]

The district court granted New Cingular's 12(b)(6) motion to dismiss each of the claims, and Shroyer appeals. We affirm the dismissal of the fraud and unfair competition claims and the dismissal of the claims for declaratory relief with regard to those claims, but we reverse the dismissal of the breach of contract claim and the claim for declaratory relief with regard to that claim.

---

[1]Shroyer had made additional claims against New Cingular, but did not include them in his first amended complaint and does not urge them here.

## I.    Federal Preemption

[1] New Cingular argues that Shroyer's claims are pre-empted by 47 U.S.C. § 332(c)(3)(A) because the claims challenge the quality and rates of service, and those areas are reserved exclusively to the FCC. We reject this contention with regard to Shroyer's breach of contract claim and his misrepresentation claim. In the main, Shroyer is challenging New Cingular's rates and quality of service only insofar as they are contrary to the ones to which he had contractual rights or were misrepresented; he is not asking the court to rule on the reasonableness of a particular rate, and the quality of service is an issue only as it relates to, or was misrepresented as satisfying, the contract on which he sues. The claims are state law claims that do not tread on the FCC's exclusive power to regulate rates and market entry. To the degree, however, that Shroyer's unfair competition claim alleges unfairness resulting from the merger itself or its approval by the FCC, it is preempted.

Section 332 provides: "[N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). The FCC has stated that § 332 does not prevent states from deciding "whether under state law, there was a difference between promise and performance" of "the terms and conditions of a contract." *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17035 (2000). In that opinion, the FCC "reject[ed] arguments by [cellular phone service providers] that non-disclosure and consumer fraud claims are in fact disguised attacks on the reasonableness of the rate charged for the service."[2] *Id.* New Cingular would have this court rely on

---

[2]Because the FCC is authorized to issue binding legal rules, an order issued under that authority is entitled to *Chevron* deference. *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1065-66 (9th Cir. 2005).

*Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983 (7th Cir. 2000), to hold that the substance of Shroyer's claims is really an attack on the post-merger service, and that deciding the case would necessarily involve regulating the modes and conditions under which New Cingular may begin offering service. But the FCC rejected this per se argument in *In re Wireless Consumers Alliance*, and so do we.[3]

*Bastien* dealt with a pre-merger AT&T wireless consumer who was dissatisfied with the signal he was receiving on his cellular phone. He alleged that AT&T breached its contract and violated a state consumer protection statute by failing to build sufficient cell towers and misrepresenting the quality of its services. *Bastien*, 205 F.3d at 985. The Seventh Circuit held that although some of the claims sounded in traditional state law, they were all "founded on the fact that AT&T Wireless had not built more towers and more fully developed its network at the time Bastien tried to use the system." *Id.* at 989. The FCC has interpreted *Bastien* to hold that it is the substance of the claim, not its form, that determines preemption. *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. at 17036-37. New Cingular correctly asserts that in both that case and here, the plaintiffs challenged the level of service they received as wireless customers. But the important difference lies in the theories on which they based their challenges. The plaintiff in *Bastien* was asking the court to decide the requisite number of cellular towers needed to support service. Here, on the other hand, Shroyer is asking the court to decide whether New Cingular has performed its promise in a contract and whether it misrepresented the level of service it would

---

[3]New Cingular attempts to distinguish *In re Wireless Consumers Alliance* by observing that there the FCC was deciding whether an award of damages based on state law breach of contract and fraud claims was preempted by § 332. Here, New Cingular argues, we are confronted with whether the contract and fraud claims themselves are preempted. This difference does not affect our conclusion; if damages are not preempted, neither are the claims under which they are awarded.

provide. The latter inquiries are ones that § 332, as interpreted in *Wireless,* leaves open to state adjudication.[4]

Similarly, a court does not have to determine the reasonableness of rates to decide Shroyer's fraud claim, for "[a] carrier may charge whatever price it wishes and provide the level of service it wishes, as long as it does not misrepresent either the price or the quality of service." *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. at 17035. Consequently, the fraud claim, like Shroyer's other claims, is not preempted by § 332.

Furthermore, *Bastien* dealt with market entry, which the states are expressly excluded from regulating by § 332. Shroyer's breach of contract claim does not. Shroyer claims that New Cingular broke the terms of the contract when the service, support, and cellular phone reception significantly decreased. This breach of contract claim does not depend on whether New Cingular's service is above or below the proper standard for cell phone service; its claim is that the level of service is other than that promised in Shroyer's cell phone contract. Shroyer may or may not be able to prove his breach of contract claim, but the claim as stated is not preempted by § 332.[5] Although the *Bastien* panel uses broad language to describe the type of claims that would be preempted, it is not persuasive here because *Bastien* relied on authority that has been expressly rejected by the FCC.

---

[4]New Cingular relies on *Aubrey v. Ameritech Mobile Commc'ns., Inc.*, No. 00-75080, 2002 WL 32521813 (E.D. Mich. 2002), which held a claim of breach of contract similar to Shroyer's preempted because "a decision in the Plaintiff's favor would require a determination as to the type and adequacy of the technology that a wireless service provider . . . must use in order to enter or serve a particular market." *Id.* at *3. We do not accept *Aubrey*'s general conclusion. Shroyer can succeed on his breach of contract claim if he can show that New Cingular did not perform their promises, regardless of the relative adequacy of various technologies.

[5]His misrepresentation claim also is not preempted, but as we will explain, there are other deficiencies that support its dismissal.

The *Bastien* panel stated that "[t]here can be no doubt that Congress intended complete preemption" as to suits regarding rates and entry. *Bastien*, 205 F.3d at 986-87. "[A] complaint that service quality is poor is really an attack on the rates charged for the service . . . . The act makes the FCC responsible for determining the number, placement and operation of the cellular towers and other infrastructure." *Id.* at 988. *Bastien* cites the Supreme Court case of *AT&T Co. v. Central Office Telephone*, 524 U.S. 214, 223 (1998) as authority for the proposition that "most consumer complaints will involve the rates charged by telephone companies or their quality of service." *Bastien*, 205 F.3d at 988. However, *Central Office Telephone* found preemption based on the federal filed rate requirements of the Communications Act; the FCC has stated that the filed rate doctrine does not apply to § 332(c)(3) preemption questions. 15 F.C.C.R. at 17029.

Rather, the FCC ruled that the award of monetary damages based on state contract or tort causes of action is not necessarily equivalent to rate regulation and thus is not generally preempted by § 332. *See id.* at 17036. We agree that the breach of contract and misrepresentation claims of Shroyer are not preempted.

Elements of Shroyer's unfair competitition claim, however, depend on the assessment of the public benefit of the merger. That determination has already been made by the FCC, and reexamination of that issue under state law is preempted either by § 332 or by the ordinary principles of conflict preemption.

## II.    Failure to State a Claim

We review de novo an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[6] *Gibson v.*

---

[6]It appears, by statements made in the dismissal order, that the district court considered materials outside of the pleadings, such as the

*Office of Attorney Gen.*, 561 F.3d 920, 925 (9th Cir. 2009). We have held that dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In addition, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## A.   Breach of Contract

**[2]** Shroyer sufficiently states a claim that New Cingular breached its contract with him. He alleges that his service degraded after the merger, in violation of AT&T's promise in the contract. He also alleges that, by requiring Shroyer to sign up for a different contract with the merged company and pay additional expenses in order to maintain the former quality of service, New Cingular required additional consideration from Shroyer before it would perform its preexisting contractual duty. Finally, he alleges that this conduct was in violation of the implied covenant of good faith and fair dealing.

**[3]** The first amended complaint does not point to the specific provisions in the AT&T contract that Shroyer alleges were violated, but he directed the district court to them in his opposition to the motion to dismiss and he asked for the opportunity to add the provisions to the complaint if necessary.[7]

---

Shroyer/AT&T contract, a press release regarding the AT&T/Cingular merger, and the FCC's merger order. When this is the case, the 12(b)(6) motion should be converted into one for summary judgment, and the parties should be given an opportunity to present related materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The district court did not decide the motion under the summary judgment standard, and the parties do not challenge this choice. Therefore, we analyze the claims under a 12(b)(6) standard.

[7]Shroyer's complaint could easily be amended to refer specifically to the contract provisions, but the lack of such an amendment thus far does not affect our analysis. The contract is in the record and the district court considered it when ruling. Moreover, Shroyer's complaint clearly sets out the facts and legal theory under which he seeks relief.

Those provisions are: "Service rates and other charges and conditions for each Number or Device are described in your Sales Information"; and "Service is normally available to your Device when it is within the operating range of our system." The contract also provided that "[s]ervice may be . . . temporarily limited or interrupted due to system . . . modifications," and New Cingular argues that this provision defeats Shroyer's breach of contract claim. New Cingular is wrong, at least from a Rule 12(b)(6) standpoint. Shroyer alleges that service was not "normally available" within the system's range, and that this failure was neither temporary nor caused by the excepted conditions. Whether the service interruption provision in the contract covered the types of problems that Shroyer alleges is to be decided on summary judgment or beyond.[8] Shroyer successfully stated a claim for breach of contract, and thus it was error to dismiss it.

## B.   Fraud and Deceit

**[4]** Shroyer claims that New Cingular misrepresented: 1) to AT&T customers that they would be fully supported by the newly merged company, providing "all the advantages only the nation's largest wireless company can provide"; 2) to the FCC that the merger would improve service quality and coverage; and 3) to AT&T customers the reasons why their service was degraded. All three of these claims were properly dismissed, albeit for different reasons.

---

[8]New Cingular also cites to a 2004 press release and *In re Applications of AT&T Wireless Servs.*, 19 F.C.C.R. 21522 (2004), in responding to Shroyer's breach of contract claim. In both of these documents there is discussion that the AT&T/Cingular merger could cause service interruptions. Neither of these documents were part of the contract, however, and both came after the contract's formation, so any disclosures or warnings that New Cingular made in them are irrelevant to the contract claim.

### 1.   Particularity

**[5]** New Cingular first argues that all three counts fail the particularity requirement of Federal Rule of Civil Procedure 9(b). In order to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded. *Id.* Here, Shroyer's allegations of fraud concern a relatively definite time frame, beginning with the merger application to the FCC and ending with New Cingular's refusal to disclose to its customers why they were experiencing service degradations. Moreover, while the claims are made on information and belief, Shroyer explains exactly what it is that he believes constituted the fraudulent statements: New Cingular telling the FCC that it would honor its pre-existing contracts. Thus, the fraud claims have been pleaded with particularity sufficient to allow New Cingular to prepare an answer.

### 2.   Reliance

New Cingular next argues that the fraud claims cannot stand because Shroyer cannot prove both actual and justifiable reliance. *See OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 864 (Cal. Ct. App. 2007) (holding that in fraud and nondisclosure claims, a plaintiff must show actual and justifiable reliance). Shroyer counters that reliance can be presumed because New Cingular misrepresented its plans to the FCC, and omitted information from Shroyer.

**[6]** The first count was properly dismissed because it is mere commercial " 'puffery' upon which a reasonable consumer could not rely." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (affirming dismissal

of fraud claims that were based on assurances that a system's development was "high priority"). "[A]ll the advantages that only the nation's largest wireless company can provide" is a vague statement and provides nothing concrete upon which Shroyer could reasonably rely.

**[7]** Shroyer depends on the fraud-on-the-regulator theory to prove actual reliance in his second and third fraud claims. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095-96 (Cal. 1993) (where defendant has reason to know that a third party will communicate the defendant's misrepresentation to plaintiff, and the third party in fact does so communicate, defendant is liable to plaintiff). As to the second fraud claim, for Shroyer successfully to argue that New Cingular misrepresented facts to the FCC, there must have been some communication between the FCC and Shroyer to the effect that New Cingular was planning on maintaining compliance with its preexisting contracts. *Mirkin*, 5 Cal. 4th at 1089-1108 (indirect communication principle inapplicable to plaintiff class of company stock purchasers because they could not "allege that they actually read or heard the alleged misrepresentations" about the company's prospects and financial status). Shroyer's complaint does not allege any such communication. Therefore, the dismissal of the second claim was proper.

**[8]** As to the third claim, Shroyer erroneously argues that actual reliance need not be proven when the fraud is based on omissions of communication by New Cingular to its customers. The non-precedential cases on which Shroyer relies have not been adopted by California. *Id.* at 1093. Moreover, Shroyer does not allege that, if New Cingular had included the omitted information on why service was degraded, he would have acted differently. *Id.* ("One need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently."). He merely states that the nondisclosure was fraudulent. This allegation is insufficient under California law, and the third claim for fraud based on omissions to Shroyer was also properly dismissed.

### C.    Unfair Competition

**[9]** Shroyer alleges that New Cingular's business practices have been "unlawful, unfair and deceptive" to the general public, in violation of California Business and Professions Code §§ 17200-210. Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." It is written in the disjunctive, establishing "three varieties of unfair competition." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (Cal. Ct. App. 2002).

**[10]** In his complaint, Shroyer alleged that New Cingular violated the common law of unfair competition and breached his contract. These practices alone do not amount to a violation of the "unlawful" prong of § 17200; Shroyer must also allege that New Cingular engaged in a business practice "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994). In other words, a common law violation such as breach of contract is insufficient. *See Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 450-54 (Cal. Ct. App. 1988) (finding a § 17200 violation only after finding three violations of the California Food and Agriculture Code); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75 (C.D. Cal. 2003) (holding that a violation of common law can support a § 17200 claim, provided that the conduct is also unlawful, unfair, or fraudulent). Because Shroyer does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200.

**[11]** Shroyer's amended complaint also fails to allege facts that support the unfair and fraudulent prongs of § 17200. " 'Unfair' simply means any practice whose harm to the victim outweighs its benefits." *Saunders*, 27 Cal. App. 4th at 839. And "fraudulent" conduct "requires a showing [that]

members of the public 'are likely to be deceived.' " *Id.* (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (Cal. 1992)). New Cingular is alleged to have misrepresented its intentions in the merger to the FCC and customers, and then misled customers concerning the quality of the new service. To the extent that these allegations concern merger negotiations between New Cingular and the FCC, they are preempted by 47 U.S.C. § 332(c)(3)(A). What remains are conclusory allegations about fraud and the unfair treatment of New Cingular's customers, and the court cannot determine from Shroyer's barebone allegations that he has stated a plausible claim. *See Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted).

## III.  Declaratory Relief

**[12]** The district court's dismissal of the claims for declaratory relief appears to have depended upon its ruling dismissing all claims for substantive relief. Because we affirm the district court's dismissal of the fraud and unfair competition claims, we affirm the dismissal of the claims for declaratory relief on those claims. Because we reverse the district court's dismissal of the breach of contract claim, we also reverse the denial of declaratory relief with regard to that claim.

## IV.  Conclusion

For the reasons above stated, we affirm the dismissal of Shroyer's common law fraud and unfair competition claims and the denial of declaratory relief with regard to those claims, and we reverse the dismissal of Shroyer's breach of contract claim and denial of declaratory relief with regard to that claim. The parties will bear their own costs on appeal.

**AFFIRMED in part; REVERSED in part; and REMANDED.**