**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TELESAURUS VPC, LLC, a
Delaware Limited Liability
Company,
                *Plaintiff-Appellant,*

       v.

RANDY POWER, an individual;
PATRICIA A. POWER, an individual;
RADIOLINK CORPORATION,
             *Defendants-Appellees,*

       v.

INDUSTRIAL TELECOMMUNICATIONS
ASSOCIATION, INC., a Virginia
corporation; EWA, INC., a
Virginia corporation, d/b/a
Enterprise Wireless Alliance,
 *Third-Party-Defendant-Appellees.*

No. 09-15446

D.C. No.
2:07-cv-01311-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
February 11, 2010—San Francisco, California

Filed October 8, 2010

Before: John T. Noonan, Marsha S. Berzon and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

17003

## COUNSEL

Patrick J. Richard, Nossaman LLP, San Francisco, California, for the appellant.

Kathi Mann Sandweiss and Roger L. Cohen, Jaburg & Wilk, P.C., Phoenix, Arizona, for the appellees.

## OPINION

IKUTA, Circuit Judge:

In this appeal, we hold that the complaint filed by Telesaurus VPC, LLC ("Telesaurus") against Radiolink Corporation ("Radiolink") did not allege facts sufficient to establish that Radiolink is a "common carrier" subject to suit under the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 206-07. We therefore affirm the district court's dismissal

of Telesaurus's FCA claims, but conclude that the district court erred in denying Telesaurus leave to amend. We also hold that Telesaurus's claims under Arizona law for conversion, unjust enrichment, and intentional interference with prospective economic advantage are expressly preempted by § 332(c)(3)(A) of the FCA, which preempts state regulation of market entry. *Id.* § 332(c)(3)(A). We therefore affirm the dismissal of Telesaurus's state-law claims.

# I

Both Telesaurus and Radiolink provide mobile radio services to customers. In 1999, Telesaurus's predecessor in interest, Warren Havens, bid in a competitive auction and obtained licenses for five VHF Public Coast radio frequencies (the "VPC Frequencies")[1] in Phoenix, Arizona. Radiolink also participated in this auction, but lost to Havens's higher bid. Havens subsequently assigned his interest in the frequencies to Telesaurus.[2]

Three months after Telesaurus obtained the VPC Frequencies, Radiolink submitted an application to the Federal Communications Commission ("FCC") for various frequencies including the VPC Frequencies. As required by FCC rules, Radiolink's application included a report from the Industrial Telecommunications Association ("ITA"), one of the FCC's authorized frequency coordinators, which stated that the VPC Frequencies were available at no charge on a first-come, first-served basis. *See* generally 47 C.F.R. § 90.175. Telesaurus alleges that Radiolink knew these representations to be false.

The FCC subsequently granted a mobile service license to

---

[1]VHF Public Coast frequencies, or "VPC frequencies," are a set of radio frequencies in the 160 MHZ range that the FCC has reserved for wireless radio services.

[2]For convenience, we refer to both Havens and Telesaurus as "Telesaurus."

Radiolink to use the VPC Frequencies. The license included the notation: "Regulatory Status: PMRS," indicating that Radiolink was operating a private land mobile radio service. Radiolink used these frequencies to operate its two-way mobile radio business, through which it provided customers with wireless communications in the greater Phoenix area. These operations continued until at least 2005.

After being informed by potential business partners that Radiolink was using the VPC Frequencies, Telesaurus reported Radiolink's use to the FCC. The FCC initiated proceedings sua sponte to consider whether it should modify Radiolink's license. In a March 4, 2004 memorandum opinion and order, the FCC concluded that it should not have granted Radiolink the VPC Frequencies, and proposed to modify Radiolink's license to remove those frequencies. The FCC noted that "a proposed modification under the circumstances presented would promote the public interest, convenience, and necessity because the subject channels were not available for assignment to Radiolink when the application was granted because they were previously assigned" to Telesaurus.

Radiolink moved for reconsideration, arguing that the coordination error resulted not from any fault on the part of Radiolink, but rather from a mistake made by the FCC and its certified frequency coordinator, ITA, which erred in selecting the frequencies for Radiolink's application. Telesaurus filed an opposition to Radiolink's motion, arguing that Radiolink's claim of innocence in the selection of the VPC Frequencies was not credible and that Radiolink was improperly pressuring Telesaurus to relinquish the VPC Frequencies. Telesaurus urged the FCC to investigate these issues and impose sanctions on Radiolink.

After issuing its March 4, 2004 order, the FCC directed ITA to find replacement frequencies for Radiolink, and then on December 21, 2004 granted Radiolink a license to use replacement frequencies recommended by the ITA. On July 7,

2005, the FCC issued a final modification order deleting the VPC Frequencies from Radiolink's license. The FCC concluded that "it is in the public interest to modify Radiolink's license to delete" the VPC Frequencies, because "the frequencies were not available" for private land mobile radio licensing, and should be made available for Telesaurus's use. In addition, the FCC noted that Radiolink had already obtained replacement channels, "which will minimize the impact of this action on Radiolink's operations." The FCC did not mention Telesaurus's request for further investigation or sanctions.

Two years later, Telesaurus filed suit in federal district court, alleging that Radiolink violated provisions of the FCA, 47 U.S.C. §§ 301, 308, 309, 312(a) and 503(b),[3] and in addition was liable for conversion, unjust enrichment, and intentional interference with prospective economic advantage under Arizona law.

Radiolink sought to dismiss the complaint for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). In response to Telesaurus's federal claims, Radiolink argued that the FCA provides a private cause of action only against "common carriers," 47 U.S.C. §§ 206-207, not against private mobile service providers such as Radiolink. Second, it argued that Telesaurus could not bring a claim for violation of §§ 301, 308, 309, 312(a) and 503(b) of the FCA, because those provisions impose duties only on the FCC, not on licensees. With respect to Telesaurus's state claims, Radiolink sought dismissal on the grounds that Telesaurus had no property right in the VPC Frequencies or, in the alternative, that the claims

---

[3]In brief, 47 U.S.C. § 301 prohibits radio transmission without a license; 47 U.S.C. § 308 sets forth the requirements for obtaining a license; 47 U.S.C. § 309 describes the FCC's procedure for granting a license; 47 U.S.C. § 312(a) outlines administrative sanctions and procedures for the revocation of a license; and 47 U.S.C. § 503(b) sets forth penalties for violations of the conditions of a license or provisions of the FCA.

were either expressly or impliedly preempted by
§ 332(c)(3)(A) of the FCA, 47 U.S.C. § 332(c)(3)(A).[4]

The district court dismissed Telesaurus's complaint with
prejudice, denying Telesaurus's motion for leave to amend.
Reasoning that the FCC's designation of Radiolink as a pri-
vate land mobile radio service on its license was subject to
deference under *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S.
837, 842-43 (1984), the district court held that Radiolink was
not a common carrier as a matter of law. The court further
held that Radiolink's state-law claims were expressly pre-
empted under § 332(c)(3)(A) of the FCA. Telesaurus timely
appealed.

## II

We review de novo the dismissal of a complaint for failure
to state a claim. *Alarco Pay Television, Ltd. v. Gen. Instru-
ment Corp.*, 69 F.3d 381, 384-85 (9th Cir. 1995). For pur-
poses of our review, we begin "by identifying pleadings that,
because they are no more than conclusions, are not entitled to
the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,
1950 (2009). We disregard "[t]hreadbare recitals of the ele-

---

[4]In relevant part, § 332(c)(3)(A) states:

Notwithstanding sections 152(b) and 221(b) of this title, no State
or local government shall have any authority to regulate the entry
of or the rates charged by any commercial mobile service or any
private mobile service, except that this paragraph shall not pro-
hibit a State from regulating the other terms and conditions of
commercial mobile services. Nothing in this subparagraph shall
exempt providers of commercial mobile services (where such ser-
vices are a substitute for land line telephone exchange service for
a substantial portion of the communications within such State)
from requirements imposed by a State commission on all provid-
ers of telecommunications services necessary to ensure the uni-
versal availability of telecommunications service at affordable
rates.

*Id.* § 332(c)(3)(A).

ments of a cause of action, supported by mere conclusory statements . . . ." *Id.* at 1949. After eliminating such unsupported legal conclusions, we identify "well-pleaded factual allegations," which we assume to be true, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;" that is, plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (internal quotation marks omitted); *see Evanns v. AT&T Corp.*, 229 F.3d 837, 839 (9th Cir. 2000).

We review the denial of leave to amend a complaint for abuse of discretion. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008). A district court may deny a plaintiff leave to amend if it determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986), or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies, *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III

We first consider whether the district court erred by dismissing Telesaurus's federal claims under §§ 206 and 207 of the FCA, which provide a cause of action against "common carriers." As relevant here, § 206 allows a party to bring an action for damages against "common carriers" who violate provisions of the FCA by their acts or omissions. 47 U.S.C. § 206.[5] Section 207 provides that a person claiming to be

---

[5]Section 206 provides, in pertinent part:

  In case any common carrier shall do, or cause or permit to be
  done, any act, matter, or thing in this chapter prohibited or

damaged by a common carrier may bring a complaint either before the FCC itself or as a civil suit in district court, "but such person shall not have the right to pursue both such remedies." *Id.* § 207.[6]

**[1]** Radiolink argued, and the district court agreed, that it is not a "common carrier" for purposes of §§ 206 and 207. In evaluating this argument, we begin with the language of the statute. *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330 (1978); *see McCarthy v. Bronson*, 500 U.S. 136, 139 (1991). The FCA's general definition of "common carrier" appears in § 153(10), which defines the term as: "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy . . . ." 47 U.S.C. § 153(10). Despite this general definition, a mobile service such as Radiolink is a common carrier only if it meets the more specific definition of "common carrier" set forth in § 332(c)(1). This section provides that "[a] person engaged in the provision of a service that is a commercial mobile service shall, insofar as such person is so engaged, be treated as a common carrier" for purposes of the FCA. *Id.* § 332(c)(1)(A). Any mobile service

---

declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

*Id.* § 206

[6]Section 207 provides:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

*Id.* § 207.

"that is not a commercial mobile service or the functional equivalent of a commercial mobile service" is defined as a "private mobile service," and therefore not a common carrier for purposes of the FCA.[7] *Id.* §§ 332(c)(2), (d)(3); *see In re Implementation of Sections 3(N) and 332 of the Communications Act Regulatory Treatment of Mobile Services: Second Report and Order*, 9 F.C.C.R. 1411, 1425-1454 (Mar. 7, 1994) (FCC regulations further defining these terms). The FCA defines "commercial mobile service" as "any mobile service . . . that is provided for profit and makes interconnected service available (A) to the public or (B) to such classes of eligible users as to be effectively available to a substantial portion of the public, as specified by regulation by the Commission . . . ." 47 U.S.C. § 332(d)(1). "Interconnected service," in turn, is defined as "service that is interconnected with the public switched network . . . or service for which a request for interconnection is pending . . . ." 47 U.S.C. § 332(d)(2). In sum, a mobile service provider such as Radiolink qualifies as a "common carrier" under the FCA only to the extent it is "engaged in the provision of a service" that is: (1) for profit; (2) interconnected (or pending interconnection) with the public switched network; and (3) available to the public or other specified users. *Id.* §§ 332(d)(1)-(2).

We thus consider whether Telesaurus's complaint alleges facts sufficient to establish that Radiolink is a common carrier. The complaint alleges: "Radiolink as a common carrier, knowingly violated 47 U.S.C. §§ 308 and 309, and other section[s of] the Communications Act"; that Radiolink "used the Converted Frequencies for commercial, common-carrier (as defined by the FCC) two-way radio service involving charg-

---

[7]Section 332(d)(3) provides:

the term "private mobile service" means any mobile service (as defined in section 153 of this title) that is not a commercial mobile service or the functional equivalent of a commercial mobile service, as specified by regulation by the Commission.

47 U.S.C. § 332(d)(3).

ing various customers for use of mountain-top and other high radio repeater sites to provide wireless communications in the greater Phoenix region"; and that Radiolink "carried on this for-profit common carrier[ ] wireless service" for many years.

**[2]** We do not assume the truth of the complaint's bare legal conclusion that Radiolink is a common carrier, *Iqbal*, 129 S. Ct. at 1950, but instead consider whether the complaint's well-pleaded facts are sufficient to state a claim. Telesaurus's complaint plausibly alleges that Radiolink is a for-profit endeavor, thus satisfying one of the elements required to meet the definition of a common carrier. *See* 47 U.S.C. § 332(d)(1)-(2). But the complaint does not adequately allege that Radiolink's service is interconnected or pending interconnection, as defined in § 332(d)(2), or that it is provided to the public or the other users specified in § 332(d)(1). *Id.* As such, we lack "sufficient factual matter, accepted as true" to establish that Radiolink is a common carrier. *Iqbal*, 129 S.Ct. at 1949.

Telesaurus argues that Radiolink must be deemed to be a common carrier because it was using the VPC Frequencies, which the FCC designated for use only by commercial mobile services. We reject this tautology. As explained above, the definition of "commercial mobile services" does not turn on the nature of the frequencies being used, but rather on whether the service being provided meets certain criteria. *See* 47 U.S.C. § 332(d)(1)-(2); *see also S.W. Bell Tel. Co. v. FCC*, 19 F.3d 1475, 1481 (D.C. Cir. 1994) ("Whether an entity in a given case is to be considered a common carrier or a private carrier turns on the particular practice under surveillance.").

**[3]** Because a private cause of action under §§ 206 and 207 may be brought only against a "common carrier," and because Telesaurus has failed to make a plausible allegation that Radiolink is such a carrier, we agree with the district court that Telesaurus has failed to state a claim under the FCA. 47 U.S.C. §§ 206-07.

Given this conclusion, we turn to Telesaurus's argument that the district court erred in denying it leave to amend its complaint. As noted above, the district court concluded that the "Regulatory Status: PMRS" notation on Radiolink's license was a determination by the FCC, entitled to deference under *Chevron*, 467 U.S. at 843, that Radiolink was not a common carrier for purposes of Telesaurus's suit. Under *Chevron*, we defer to an agency's construction of the statute it administers if "the statute is silent or ambiguous with respect to the specific issue," and the agency's interpretation "is based on a permissible construction of the statute." *See id.* Moreover, even if an agency's decision does not qualify for *Chevron* deference, we still give "considerable weight" to the "well-reasoned views of the agencies implementing a statute," in proportion to "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *United States v. Mead Corp.*, 533 U.S. 218, 227-28, 234-235 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)) (footnotes and internal quotation marks omitted).

**[4]** In this case, however, the parties have not identified, and we are not aware of, any authority indicating that the FCC's notation on Radiolink's license constitutes an interpretation entitled to *Chevron* deference. And, given the absence of any reasoned analysis by the FCC explaining the "PMRS" notation, we cannot give it significant weight under *Mead* and *Skidmore*. *See Mead*, 533 U.S. at 228; *Skidmore*, 323 U.S. at 140. Indeed, it is far from clear that the bare notation "PMRS" on Radiolink's license, without more, even represents the FCC's considered judgment that Radiolink is a "private mobile service" for purposes of Telesaurus's suit. *See* 47 U.S.C. § 332(c)(2), (d)(3). Furthermore, "common carrier" status depends upon the services Radiolink is providing to its customers, an inquiry not necessarily identical to the question of regulatory status noted on a license. *Id.* § 332(d)(1)-(2); *see S.W. Bell*, 19 F.3d at 1481. In light of these considerations, the notation on Radiolink's license lacks any " 'power to per-

suade,' " *Mead*, 533 U.S. at 229 (quoting *Skidmore*, 323 U.S. at 140), and therefore is not entitled to deference.

**[5]** The district court thus erred in holding that the "PMRS" notation on Radiolink's license compelled the conclusion that, as a matter of law, Radiolink was not a common carrier for purposes of Telesaurus's suit. Because the district court's basis for denying leave to amend was incorrect, and Radiolink has not identified any other reason that amendment would be futile, we conclude that the district court abused its discretion by denying Telesaurus leave to amend. *See Schreiber*, 806 F.2d at 1402; *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).[8]

## IV

Telesaurus also appeals from the dismissal of its state tort claims for conversion, unjust enrichment, and intentional interference with prospective economic advantage. Telesaurus alleges that Radiolink knew that Telesaurus alone was rightfully licensed to use the VPC Frequencies, but submitted a license application to the FCC that falsely characterized the frequencies as available. According to Telesaurus, Radiolink subsequently used the VPC Frequencies wrongfully and in violation of Telesaurus's rights. As a result, Telesaurus alleges that it lost specific economic opportunities and incurred damages. Telesaurus argues that the district court erred in holding that the FCA expressly or implicitly preempts these claims.

---

[8]Because we affirm the dismissal of Telesaurus's complaint on this ground, we do not reach Radiolink's argument that no private right of action under 47 U.S.C. §§ 206 and 207 is available for breach of 47 U.S.C. §§ 301, 308, 309, 312(a) and 503(c)(1). The district court will have the opportunity to address Radiolink's argument on this issue if Telesaurus is able to amend its pleadings to make a plausible allegation that Radiolink is a common carrier.

## A

"The purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (plurality opinion) (internal quotation marks omitted). Because "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose," *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008), we first look to the text of the FCA to determine whether Congress explicitly preempted Radiolink's common law claims. *See generally Metrophones Telecom., Inc. v. Global Crossing Telecom., Inc.*, 423 F.3d 1056, 1071-72 (9th Cir. 2005).

**[6]** The express preemption provision of the FCA relevant to mobile services, § 332(c)(3)(A), states in relevant part that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). Under this section, a state enactment may be preempted either because: (1) the enactment regulates the rates charged by a mobile service; or (2) because the enactment regulates the market entry of any such service.

The FCC has interpreted the scope of this preemption provision in *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17026-35 (2000), an interpretation that we adopted in *Shroyer v. New Cingular Wireless Services, Inc. See* 606 F.3d 658, 662 & n.2, 663 (9th Cir. 2010).[9] In *In re Wireless*, the

---

[9]In the course of discussing *In re Wireless*'s determination that certain state tort claims were not preempted by § 332(c)(3), *Shroyer* noted that "[b]ecause the FCC is authorized to issue binding legal rules, an order issued under that authority is entitled to *Chevron* deference." *See Shroyer*, 606 F.3d at 662 n.2. *Shroyer* did not address the Supreme Court's recent statement that it does not give *Chevron* deference to "an agency's *conclu-*

FCC considered a petition seeking a declaratory ruling that § 332(c)(3)(A) precluded state courts from awarding monetary relief against commercial mobile radio service providers for a range of state tort and contract actions. 15 F.C.C.R. at 17021. Commenters argued that such actions were preempted because the adjudication of monetary damage claims would per se "require[ ] the [state] court to regulate rates" in contravention of § 332(c)(3)(1). *Id.* at 17024-25.

In a thorough and well-reasoned opinion, the FCC rejected this per se approach, adopting instead a case-by-case analysis for preemption of state tort actions under § 332(c)(3)(1). *Id.* at 17022. First, the FCC determined that "judicial action *can* constitute state regulatory action for purposes of Section 332," and thus may be expressly preempted under that provision. *See* 15 F.C.C.R. at 17027 (emphasis added). The FCC explained that "[t]his conclusion comports with the Supreme Court's determination that a judicial decision can constitute state action, as well as with the determinations of the Supreme Court and other courts that, like legislative or administrative action, judicial action constitutes a form of state regulation." *Id.* at 17027 & nn.39-40 (citing, inter alia, *Shelley v. Kraemer*, 334 U.S. 1 (1948) and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 n.17 (1996)).

Second, the FCC determined that although "[s]ection 332 does not generally preempt the award of monetary damages by state courts based on state tort and contract claims," it

_____

*sion* that state law is pre-empted," but rather accords weight to the "agency's explanation of state law's impact on the federal scheme" based on "its thoroughness, consistency, and persuasiveness." *Wyeth v. Levine*, 129 S.Ct. 1187, 1201 (2009) (citing *Mead*, 533 U.S. at 234-35; *Skidmore*, 323 U.S. at 140). In considering *In re Wireless*'s interpretation of § 332(c)(3), however, application of either the *Skidmore* factors or *Chevron* deference would yield the same result. Therefore, we need not address the question whether some or all of the FCC's analysis in *In re Wireless* is entitled to *Skidmore* rather than *Chevron* deference.

"bars state regulation of, and thus lawsuits regulating, the entry of or the rates or rate structures of [mobile service] providers." *Id.* at 17026, 17028. As relevant to the rate preemption alleged in *In re Wireless*, the FCC held that if "the award of monetary damages [is] necessarily equivalent to rate regulation," or required a court to "rule on the reasonableness of [a] . . . carrier's charges," it is preempted. *Id.* at 17028, 17035. The FCC emphasized that "whether a specific [claim] is prohibited by Section 332 will depend on the specific details of the award and the facts and circumstances of a particular case." *Id.* at 17040.

*Shroyer* adopted *In re Wireless*'s interpretation of § 332(c) along with its analytical framework. *See* 606 F.3d at 662-63. In *Shroyer,* a plaintiff filed a class action against a wireless service provider, alleging that his cell-phone service had been "severely degraded" following the merger of his service provider with another. *Id.* at 661. The plaintiff sought a declaratory judgment as well as damages for alleged breach of contract, fraud, and unfair competition. *Id.* The service provider argued that the plaintiff's claims were preempted by § 332(c)(3)(A) because the claims "challenge[d] the quality and rates of service, and those areas are reserved exclusively to the FCC." *Id.* (citing 47 U.S.C. § 332(c)(3)(A)).

In considering the parties' preemption arguments, we first followed the FCC's conclusion that § 332(c)(3)'s preemption of state regulation applies to judicial action. *See id.* at 662; *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1058 (9th Cir. 2008) (applying express preemption analysis under § 332(c)(3)(A) to a class action complaint alleging violation of a Washington statute); *see also Pinney v. Nokia Inc.*, 402 F.3d 430, 455-56 (4th Cir. 2005); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 989 (7th Cir. 2000), *distinguished on other grounds by Shroyer*, 606 F.3d at 662-63. Second, we adopted *In re Wireless*'s holding that not all common law damages actions will fall within the express scope of § 332(c)(3)(A). *Shroyer*, 606 F.3d at 662-63. As in *In re*

*Wireless*, we reasoned that § 332(c)(3)(A) preempts damage claims only if the court, in adjudicating the plaintiff's claim, would have to engage in a regulatory analysis of the "reasonableness" of a particular rate, *id.*; *see AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003), or, said otherwise, would be "called upon to substitute its judgment for the agency's on the reasonableness of a rate," *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 299 (1976). Because plaintiff's contract and misrepresentation claims in *Shroyer* did not "ask[ ] the court to rule on the reasonableness of a particular rate," we concluded that the claims were not preempted. *Shroyer*, 606 F.3d at 661. Contrariwise, we held that "[e]lements of Shroyer's unfair competition claim" were preempted because they "depend[ed] on the assessment of the public benefit of the merger." *Id.* at 663; *see id.* at 666. We concluded that § 332(c)(3)(A) precluded any reexamination of the merger issue, a regulatory determination already made by the FCC. *Id.* at 663.

**[7]** Neither *Shroyer* nor *In re Wireless* articulated a corresponding test for preemption under the "market entry" prong of § 332(c)(3)(A). However, the logic of these cases provides substantial guidance. *See Shroyer*, 606 F.3d at 662-63; *In re Wireless*, 15 F.C.C.R. at 17034. Just as § 332(c)(3)(A) preempts claims that require a court to substitute its judgment for the agency's with respect to the reasonableness of a particular rate, § 332(c)(3)(A) also preempts claims that require a court to substitute its judgment for the agency's with regard to a market-entry decision. *Cf. Shroyer*, 606 F.3d at 661-63; *In re Wireless*, 15 F.C.C.R. at 17035; *see also Pinney*, 402 F.3d at 456. In other words, § 332(c)(3)(A) preempts a state tort action that would require a court to engage in an assessment or reexamination of the FCC's regulatory determination regarding a mobile service's entry into the market.

**[8]** Licensing has long been recognized as the FCC's core tool in the regulation of market entry. *See generally* 47 U.S.C. § 301; *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 376,

379-80 (1969). Accordingly, section 332 of the FCA outlines the FCC's duty to manage the spectrum available to mobile services through a licensing system. 47 U.S.C. § 332. Such licensing directly involves agency determinations of public interest, safety, efficiency, and adequate competition, all inquiries specially within the expertise of the FCC. *Id.* § 332(a)(1)-(4); *see id.* § 301 (noting the express purpose of the FCA: "to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority . . . ."). Accordingly, § 332(c)(3)(A) preempts state tort actions that require a court "to substitute its judgment for the agency's" with regard to a licensing decision. *Nader*, 426 U.S. at 299.

**B**

We apply these principles to Radiolink's contention that Telesaurus's common law claims for conversion, unjust enrichment, and intentional interference with prospective economic advantage are preempted under either the "rates" or "market entry" prongs of § 332(c)(3)(A).

Under Arizona law, conversion "is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. App. 2005) (internal quotation marks omitted). The elements of unjust enrichment are "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment[;] and (5) an absence of a remedy provided by law." *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. App. 1995). Finally, to establish a claim for tortious interference with prospective economic advantage, Telesaurus must prove "the existence of a valid contractual

relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 494 (Ariz. App. 1995). To state a claim, Telesaurus must establish that the interference was improper, as determined under a seven-factor test that Arizona courts have adopted from the Restatement of Torts. *Bar J Bar Cattle Co. v. Pace*, 763 P.2d 545, 547-48 (Ariz. App. 1988).

**[9]** Turning first to § 332(c)(3)(A)'s preemption of state authority to regulate rates, Radiolink argues that Telesaurus's claims are preempted because they "implicitly seek to set a value on the frequencies at issue, using state-law principles to usurp the rate setting function that is the exclusive province of the FCC." We disagree. This case involves a suit brought by one mobile-service provider against another, alleging damages to its business interests from allegedly improper use of certain frequencies. Although a court adjudicating Telesaurus's state-law claims would have to determine whether Telesaurus was damaged by Radiolink's use of the VPC Frequencies, and the extent of any such damage, this determination would not require the court to pass judgment on the reasonableness of Radiolink's charges in order to provide compensation for Telesaurus's alleged injury. *In re Wireless*, 15 F.C.C.R. at 17035. At most, it might be "appropriate for [the court] to take the [rate] into consideration in calculating damages." *Id.* Such consideration of a rate as a fact informing damages calculations does not infringe on the FCC's area of exclusive authority to regulate the rates applicable to mobile service providers. Because a court considering Telesaurus's state tort actions would not have to engage in a regulatory analysis of the reasonableness of a particular rate, or to "substitute its judgment for the agency's on the reasonableness of a rate," *Nader*, 426 U.S. at 299, we conclude that Telesaurus's

damages claims are not expressly preempted as attempts to regulate a rate. 47 U.S.C. § 332(c)(3)(A).

[10] Turning next to § 332(c)(3)(A)'s preemption of state authority to regulate market entry, Radiolink argues that because Telesaurus's state tort claims rest on the allegation that Radiolink's FCC-licensed operation of certain frequencies was "wrongful" or "unlawful," they are expressly preempted under the market entry prong of § 332(c)(3)(A). We agree. Each of Telesaurus's state-law claims requires adjudication of whether Radiolink's use of the VPC Frequencies was improper, and, if so, whether Telesaurus suffered damage from such allegedly wrongful use. Under the facts of this case, such allegations would require the court to substitute its judgment for the FCC's with regard to a licensing decision, a core determination regarding market entry.

[11] Although Telesaurus alleges that Radiolink's operation of the VPC Frequencies was wrongful, at all times relevant to Telesaurus's complaint Radiolink operated under a valid FCC license granting it the authority to use those frequencies. Although the FCC subsequently modified the license to delete the VPC Frequencies, Telesaurus's tort claims amount to a collateral challenge to the validity of the license initially granted to Radiolink by the FCC. As we stated in *Shroyer*, state tort law may not be used to reexamine or reassess the FCC's determinations. *See Shroyer*, 606 F.3d at 663. Indeed, here, there is an irreconcilable conflict between the FCC's exclusive licensing authority, i.e. its power to regulate market entry, and Telesaurus's allegations that Radiolink "wrongfully" or "unlawfully" operated under its FCC license. *See Nader*, 426 U.S. at 299; 47 U.S.C. § 332(c)(3)(A). Because an adjudication of Telesaurus's tort claims would be necessarily equivalent to second-guessing the FCC's issuance of a license, they are expressly preempted under the market entry prong of § 332(c)(3)(A). 47 U.S.C. § 332(c)(3)(A).

**[12]** Telesaurus argues that even if a court's adjudication of its tort claims would require reconsideration of the FCC's licensing determination, its state tort claims are saved from preemption under 47 U.S.C. § 414, the FCA's savings clause. This section provides that nothing in the FCA's provisions governing wire or radio communication "shall in any way abridge or alter the remedies now existing at common law or by statute," but rather "are in addition to such remedies." *Id.* § 414.[10] The FCC addressed and rejected a substantially identical claim in *In re Wireless*, reasoning that "[u]nder accepted principles of statutory construction . . . the savings clause cannot preserve state law causes of action or remedies that contravene express provisions of the Telecommunications Act." 15 F.C.C.R. at 17040. We agree. As the Supreme Court has explained, the savings clause of the Communications Act, § 414, preserves only those rights that are "not inconsistent" with statutory requirements elsewhere in the FCA. *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 227-28 (1998). Accordingly, the Supreme Court concluded that the savings clause could not be construed to preserve "a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself." *Id.* at 228 *(internal modifications omitted) (citing Tex. & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907)). Indeed, to read § 414 expansively would "abrogate the very federal regulation of mobile telephone providers that the [FCA] intended to create." *Bastien*, 205 F.3d at 987. Section 332(c)(3)(A) does not as a general matter preempt state tort and contract actions, thus ensuring that § 414 has effect. *See In re NOS Commc's*, 495 F.3d 1052, 1058 (9th Cir. 2007) ("[S]ection 414 evidences Congressional intent to allow some state law claims to proceed.") (discussing *Marcus v. AT&T Corp.*, 138

---

[10]Section § 414 provides:

Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

F.3d 46, 54 (2d Cir. 1998)). Nevertheless, actions that have the effect of regulating rates and market entry are expressly preempted by § 332(c)(3)(A) and thus beyond the scope of § 414.

**[13]** Telesaurus's state-law claims, in effect, call upon the court to deem "wrongful" actions that the FCC, under its licensing authority, expressly authorized. Section 332(c)(3)(A) prohibits us from substituting our judgement for that of the agency's under the guise of a state-law tort claim. *See Shroyer*, 606 F.3d at 662-63. We therefore conclude that Telesaurus's claims are expressly preempted, and affirm their dismissal.

## V

We conclude that the district court properly dismissed Telesarus's claims under the FCA, but erred in denying leave to amend. *See* 47 U.S.C. §§ 206-07. We affirm the dismissal of Telesaurus's claims under Arizona law for conversion, unjust enrichment, and intentional interference with prospective economic advantage, because such claims are expressly preempted by section § 332(c)(3)(A) of the FCA. *Id.* § 332(c)(3)(A).

**AFFIRMED IN PART & REVERSED IN PART; REMANDED.**