**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LOS ANGELES LAKERS, INC., a California corporation,
*Plaintiff-Appellant*,

v.

FEDERAL INSURANCE COMPANY, an Indiana corporation,
*Defendant-Appellee.*

No. 15-55777

D.C. No.
2:14-cv-07743-DMG-SH

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted February 15, 2017
Pasadena, California

Filed August 23, 2017

Before: Richard C. Tallman and N. Randy Smith, Circuit Judges, and Stephen Joseph Murphy, III,* District Judge.

Opinion by Judge N.R. Smith;
Concurrence by Judge Murphy, III;
Dissent by Judge Tallman

---

* The Honorable Stephen Joseph Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

## SUMMARY[**]

### Telephone Consumer Protection Act

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of an action brought under diversity jurisdiction by the Los Angeles Lakers against the Federal Insurance Company after it denied coverage and declined to defend the Lakers in a lawsuit alleging violations of the Telephone Consumer Protection Act.

The underlying action alleged that the Lakers violated the Telephone Consumer Protection Act when, during a game, they invited attendees to send a text to a specific number and then sent a response text message using an "automatic telephone dialing system," in violation of the Act. Federal Insurance Company denied coverage and declined to defend the Lakers, concluding that the underlying lawsuit was an invasion of privacy suit, which was specifically excluded from coverage.

The panel held that because a Telephone Consumer Protection Act claim is inherently an invasion of privacy claim, Federal Insurance Company correctly concluded that the underlying Telephone Consumer Protection Act claims fell under the Policy's broad exclusionary clause. Accordingly, Federal Insurance Company did not breach the insurance policy, or the implied covenant of good faith and fair dealing, under any cognizable legal theory, when it declined to defend against or cover the underlying complaint.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

District Judge Murphy concurred and wrote separately to state that this court should have decided the case on narrower grounds. Judge Murphy stated that the allegations in the underlying action were sufficient to determine that the claims arose from an invasion of privacy and the Court did not need to hold more broadly that a Telephone Consumer Protection Act claim is inherently an invasion of privacy claim.

Dissenting, Judge Tallman stated that because the underlying action sought recovery based on an alleged violation of the Telephone Consumer Protection Act, and did not seek recovery based on invasion of privacy, he would reverse the district court's order dismissing the Lakers' claims.

## COUNSEL

Kirk Pasich (argued), Pamela M. Woods, and Anamay M. Carmel, Liner LLP, Los Angeles, California, for Plaintiff-Appellant.

Robert M. Traylor (argued), Seltzer Caplan McMahon Vitek, San Diego, California, for Defendant-Appellee.

## OPINION

N.R. SMITH, Circuit Judge:

When Congress passed the Telephone Consumer Protection Act ("TCPA") it sought to protect individuals against invasions of privacy, in the form of unwanted calls (and now text messages) using automatic telephone dialing systems. Congress explicitly stated this purpose in the text of the TCPA. In light of this plainly stated purpose, and the lack of any other indicia of congressional intent in the statute, a TCPA claim is, by its nature, an invasion of privacy claim. Accordingly, a liability insurance policy that unequivocally and broadly excludes coverage for invasion of privacy claims also excludes coverage for TCPA claims.

## BACKGROUND

On October 13, 2012, David M. Emanuel attended a basketball game at the Los Angeles Lakers' home arena—the Staples Center. While at the game, Emanuel observed a message on the scoreboard, inviting attendees to send a text a message to a specific number. Emanuel sent a text message to the number, hoping the Lakers would display the message on the scoreboard. In response, Emanuel received the following text message:

> Thnx! Txt as many times as u like. Not all msgs go on screen. Txt ALERTS for Lakers News alerts. Msg&Data Rates May Apply. Txt STOP to quit. Txt INFO for info

On November 20, 2012, Emanuel, on behalf of himself and others similarly situated, brought a class action lawsuit

against the Lakers. Emanuel filed a First Amended Complaint in the case on February 8, 2013 ("Emanuel complaint"). Emanuel alleged that the Lakers sent the response text message using an "automatic telephone dialing system," in violation of the TCPA. He asserted, several times, that this message was an invasion of his privacy, and that the Lakers had invaded the privacy of other class members. Emanuel brought two claims for relief—(1) negligent violation of the TCPA and (2) knowing and/or willful violation of the TCPA—and sought statutory damages and injunctive relief.

The Lakers promptly asked their insurance provider, the Federal Insurance Company ("Federal"), to defend them against the lawsuit. The Lakers notified Federal of the lawsuit on November 27, 2012, shortly after the first complaint was filed. Federal insured the Lakers from January 1, 2012, to January 1, 2013, under a "ForeFront Portfolio" insurance policy ("the Policy"). The Policy contained a "Directors & Officers Liability Coverage Section." This section provided "Corporate Liability Coverage," which would require Federal to pay for losses (with some restrictions) suffered by the Lakers "resulting from any Insured Organization Claim . . . for Wrongful Acts." An "Insured Organization Claim" included "a civil proceeding commenced by service of a complaint or similar pleading . . . against [the Lakers] for a Wrongful Act." The Policy defined "Wrongful Acts" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by" the Lakers. The Policy also contained a number of exclusions from Corporate Liability Coverage. Specifically, the Policy provided that "[n]o coverage will be available" for a claim,

based upon, arising from, or in consequence
of libel, slander, oral or written publication of
defamatory or disparaging material, invasion
of privacy, wrongful entry, eviction, false
arrest, false imprisonment, malicious
prosecution, malicious use or abuse of
process, assault, battery or loss of
consortium[.]

Finally, the "General Terms and Conditions Section" of the
Policy provided that Federal had "the right and duty to defend
any Claim covered by th[e] Policy." This duty applied even
if the allegations in the claim were "groundless, false or
fraudulent."

Federal denied coverage and declined to defend the
Lakers, concluding that Emanuel had brought an invasion of
privacy suit, which was specifically excluded from coverage.
After asking Federal to reconsider its position, the Lakers
filed this suit in Los Angeles Superior Court on September 2,
2014. The Lakers asserted two claims for relief. First, the
Lakers brought a claim for breach of contract, asserting that
Federal had violated the Policy by denying coverage for the
Emanuel lawsuit. Second, the Lakers brought a claim for
tortious breach of the implied covenant of good faith and fair
dealing, based on Federal's denial of coverage.

After removing the suit to federal court, Federal filed a
motion to dismiss the suit for failure to state a claim under
Federal Rule of Civil Procedure 12(b)(6). The district court
granted the motion and dismissed the case without giving the
Lakers leave to amend. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, No.
CV 14-7743 DMG (SHx), 2015 WL 2088865, at *9 (C.D.
Cal. Apr. 17, 2015). The district court found that the Lakers

could not succeed in the suit under any cognizable legal theory, because TCPA claims are "implicit invasion-of-privacy claims" that fall squarely within the Policy's "broad exclusionary clause." *Id.* at *8. The Lakers timely appealed.

## STANDARD OF REVIEW

We review de novo a district court's order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). We will affirm a dismissal for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Id.* (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "In conducting this review, we accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). We also review de novo the district court's interpretation of state contract law, *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 949 (9th Cir. 2006), and its interpretation of an insurance policy, *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996).

## ANALYSIS

This case requires us to interpret both the Policy and the TCPA. We start with the Policy and, accordingly, the California rules for interpreting insurance contracts.

## I. The Policy

California courts interpret insurance contracts under the "ordinary rules of contractual interpretation." *Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 652 (Cal. 1999) (citation omitted). In interpreting a contract, courts must "'give[] effect to the mutual intention of the parties as it existed' at the time the contract was executed." *Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 601 (Cal. Ct. App. 2008) (quoting Cal. Civ. Code § 1636). Where possible, the courts should determine the mutual intention of the parties "solely from the written provisions of the insurance policy." *Palmer*, 988 P.2d at 652 (citation omitted). In addition, courts must give a contract's terms their "ordinary and popular" meaning, "unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (citation and internal quotation marks omitted). Courts are to interpret coverage clauses in insurance contracts "broadly so as to afford the greatest possible protection to the insured." *Aroa Mktg., Inc. v. Hartford Ins. of the Midwest*, 130 Cal. Rptr. 3d 466, 470 (Cal. Ct. App. 2011) (citation omitted). In contrast, courts are to interpret "exclusionary clauses . . . narrowly against the insurer." *Id.* (citation omitted).

The Policy on its face clearly excludes from coverage claims "based upon, arising from, or in consequence of . . . invasion of privacy." The Policy does not explicitly exclude coverage of TCPA claims, so we must determine whether Emanuel's TCPA claims fall within this exclusion. However, first we must acknowledge how broad this exclusionary clause is. California courts and our court have consistently given a broad interpretation to the clause "arising from" in an insurance contract. *See Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) (quoting *Underwriters*

*at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659, 664 (9th Cir. 1960)) (interpreting exclusionary clause in insurance contract under California law); *Crown Capital Sec., L.P. v. Endurance Am. Specialty Ins.*, 186 Cal. Rptr. 3d 1, 7 (Cal. Ct. App. 2015). "[A]rising out of" encompasses "originating from, having its origin in, growing out of, . . . flowing from, . . . incident to, or having connection with." *Crown*, 186 Cal. Rptr. 3d at 7 (quoting *Davis v. Farmers Ins. Grp.*, 35 Cal. Rptr. 3d 738, 744 (Cal. Ct. App. 2005)). Thus, this clause broadly excludes from coverage claims with "a minimal causal connection or incidental relationship" to invasion of privacy. *Id.* (quoting *Acceptance Ins. v. Syufy Enters.*, 81 Cal. Rptr. 2d 557, 561 (Cal. Ct. App. 1999)); *State Farm Fire & Cas. Co. v. Salas*, 271 Cal. Rptr. 642, 645 n.4 (Cal Ct. App. 1990) (holding that "arising out of" is also broadly construed in exclusionary clauses). California courts also give the clause "based on" the same broad reading as "arising out of." *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins.*, 49 Cal. Rptr. 2d 567, 571 n.4 (Cal. Ct. App. 1996).

It is also necessary for us to examine the clause "invasion of privacy" in this exclusion. California courts have recognized "four distinct forms of tortious invasion [of privacy]." *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 118 Cal. Rptr. 370, 375 (Cal. Ct. App. 1974). Included in this list is "intrusion upon the plaintiff's seclusion or solitude."[1] *Id.* (citation omitted). This form of invasion of privacy has

---

[1] The remaining three forms of invasion of privacy are: "(2) publicity which places the plaintiff in false light in the public eye; (3) public disclosure of true, embarrassing private facts about the plaintiff; (4) appropriation of plaintiff's name or likeness for commercial purposes." *Johnson*, 118 Cal. Rptr. at 375 (citations omitted).

been described as "the right to be let alone." *Miller v. Nat'l Broad. Co.*, 232 Cal. Rptr. 668, 678 (Cal. Ct. App. 1986) (quoting *Gill v. Curtis Publ'g Co.*, 239 P.2d 630, 632 (Cal. 1952)). This right to be let alone is relative and is not absolute. *Sanders v. Am. Broad. Cos.*, 978 P.2d 67, 72 (Cal. 1999). However, unwanted calls, received at inconvenient times, generally invade an individual's privacy and right to be let alone. *See* Restatement (Second) of Torts § 652B (1977) (cited in *Shulman v. Grp. W Prods. Inc.*, 955 P.2d 469, 481–90 (Cal. 1998)).

## II. The TCPA

With an understanding of the scope of the exclusionary clause, we turn next to the TCPA. Federal argues a TCPA claim is inherently an invasion of privacy claim. The district court agreed, concluding that the protection of privacy interests was "the conceptual wellspring of the TCPA's protections." 2015 WL 2088865, at *5. The Lakers assert in response that invasion of privacy is just one of the harms which the TCPA sought to protect the public against. Thus, we must determine whether the purpose of the TCPA was to prevent invasions of privacy, or, in addition, some other harm.

In making this determination we start, as we must, with the text of the statute.[2] *McDonald v. Sun Oil Co.*, 548 F.3d

---

[2] We know of no canon of construction that instructs us first to determine if the statutory elements of a cause of action are ambiguous. Rather, we approach statutory construction as a "holistic endeavor," considering the whole text of a statute, including any portion expressing the statute's purpose. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

774, 780 (9th Cir. 2008), *abrogated on other grounds by CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014); *see also Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text."). Our inquiry will "end[] there as well if the text [of the statute] is unambiguous." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *Id.* (alteration in original) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). If "the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Lamie*, 540 U.S. at 534 (quoting *Hartford Underwriters Ins. v. Union Planters Bank*, 530 U.S. 1, 6 (2000)).

We must also "assum[e] that the legislative purpose is expressed by the ordinary meaning of the words used" by the legislature. *Richards v. United States*, 369 U.S. 1, 9 (1962). Like plain meaning, "[t]he 'plain purpose' of legislation . . . is determined in the first instance with reference to the plain language of the statute itself." *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373 (1986) (citing *Richards*, 369 U.S. at 9); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("[T]he purpose [of a statute] must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires."). In debating and considering a statute, Congress often gives numerous reasons why the statute would be advantageous. But not all of these stated objectives potentially served by the statute constitute the statute's "purpose." To find a statute's purpose we must look to see if Congress has clearly stated it in the text of the statute itself. Thus, the language of the

statute is "the best guide to the purposes of a statute," because "statutes are records of legislative compromise." *Am. Ass'n of Retired Pers. v. EEOC*, 823 F.2d 600, 604 (D.C. Cir. 1987) (citing *Bd. of Governors*, 474 U.S. at 374).

The TCPA makes it unlawful for a person,

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .
>
> > to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii). In addition, one of the individuals to the call (either the caller or the recipient) must be "within the United States." *Id.* § 227(b)(1). Unlike some statutes, the TCPA does not dedicate a section of its text to describing its purpose. However, that does not mean the TCPA does not state its purpose. In fact, Congress explicitly stated the purpose of the TCPA in two sections: § 227(b)(2)(B) and § 227(b)(2)(C). Subsection 227(b)(2) requires the Federal Communications Commission to "prescribe regulations to implement th[e] subsection" of the TCPA that outlines the "[r]estrictions on use of automated telephone equipment." In addition, § 227(b)(2)(B) provides that the Federal Communications Commission,

> may, by rule or order, exempt from the requirements of paragraph (1)(B) of this

subsection, subject to such conditions as the Commission may prescribe–

. . .

(ii) such classes or categories of calls made for commercial purposes as the Commission determines–

(I) *will not adversely affect the privacy rights that this section is intended to protect*; and

(II) do no include the transmission of any unsolicited advertisement.

(emphasis added).  Further, § 227(b)(2)(C) provides that, "[i]n implementing the requirements of this subsection, the Commission–"

may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary *in the interest of the privacy rights this section is intended to protect*.

(emphasis added).  Thus, the TCPA twice explicitly states that it is intended to protect privacy rights.  Equally as significant, the TCPA contains no other statement regarding its intended purpose.  Thus, we must presume from this

unequivocal statement, and the lack of any other statements expressing an alternative intent, that the purpose of the TCPA is to protect privacy rights and privacy rights alone.[3]  *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (explaining the doctrine of *expressio unius est exclusio alterius*).

We have before outlined the three elements of a TCPA claim: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Absent from this list is proof that the call invaded the recipient's privacy.  This omission is no mistake.  As demonstrated by the explicitly stated purpose of the TCPA, Congress concluded that the calls it prohibited in passing the TCPA were an implicit invasion of privacy.  In practice, there may be other interests that the TCPA protects.  But these alternative interests do not transform Congress's express intent to craft the TCPA to serve privacy interests. Accordingly, in pleading the elements of a TCPA claim, a plaintiff pleads an invasion of privacy claim.[4]

---

[3] We have previously cited legislative history when considering the purpose of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  In *Satterfield* we also determined that the purpose of the TCPA was to protect privacy interests. *Id.*  However, while this purpose is clear from the statute, some history was required in that case to assist us in determining the ambiguous question of whether "call," a term not defined in the TCPA, included text messages. *Id.* at 953–54. Thus, the issues in *Satterfield* are distinguishable from the question we face now.

[4] One issue raised at oral argument was whether a holding that a TCPA claim is inherently an invasion of privacy claim would prevent corporations, which do not have the same privacy interests as individuals

Moreover, once a TCPA plaintiff has established these three elements, and has thus proven an invasion of privacy, the plaintiff may obtain either actual or statutory damages. 47 U.S.C. § 227(b)(3)(B). Such damages are available only because the plaintiff has suffered a cognizable, personal injury.[5] As the district court explained, the "fact that [a plaintiff] seeks only economic damages does not strip [TCPA claims] of their privacy-based character." 2015 WL 2088865, at *7. Instead, "[t]he economic injury stems from" and is a result of a defendant's invasion of a plaintiff's privacy. *Id.* The availability of statutory damages only eases the burden on plaintiffs of establishing the actual value of the harm they

---

in many states, from obtaining relief under the TCPA. The parties did not brief this issue, so we do not address it.

However, if we were to address this issue, it would not affect our decision here. Although the statute clearly indicates that Congress intended the TCPA to protect privacy interests, the statute does not clearly indicate that the TCPA was intended to protect corporations, and we have yet to answer that question. The statute's provision of a private right of action supplies the closest indication of an answer. The statute provides that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). The statute does not define "entity." But the statute does indicate that the states are to determine which "entities" can bring TCPA claims. Thus, the states determine whether a corporation can seek or obtain relief under the TCPA.

[5] Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the dissent asserts that the three statutory elements, which do not recite a harm, alone demonstrate a legally cognizable injury. Not only is Emanuel's standing to sue not before us, but "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).

suffered when a defendant invaded their privacy. Of course, if the invasion of privacy resulted in a loss greater than the fixed statutory award, actual damages are available.

## III. The Emanuel Complaint

Emanuel asserted two claims for relief: negligent violation of the TCPA and knowing/willful violation of the TCPA. Because, as explained above, a plaintiff asserts an invasion of privacy claim when he or she asserts a TCPA claim, Emanuel asserted two invasion of privacy claims and nothing else in his complaint.[6]

When Federal received a request from the Lakers to defend them against the Emanuel complaint, Federal correctly identified the two TCPA claims as claims for invasion of privacy. It is evident from the plain language of the insurance contract that the parties intended to exclude all invasion of privacy claims. We recognize that exclusionary clauses are to be construed against the insurer; but here we must

---

[6] Emanuel also plainly stated multiple times that the Lakers' alleged violation of the TCPA invaded his privacy. *See, e.g.*, First Amended Complaint for Damages and Injunctive Relief Pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, *Emanuel v. L.A. Lakers, Inc.*, No. 2:12-cv-9936 GW (SHx) (C.D. Cal. Feb. 8, 2013), ECF No. 15, at ¶ 1 ("[T]he illegal actions of THE LOS ANGELES LAKERS, INC. . . . , in negligently contacting [Emanuel] on [his] cellular telephone, in violation of the Telephone Consumer Protection Act, . . . thereby invad[ed Emanuel's] privacy."); *id.*, at ¶ 2 ("The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like [Emanuel]."); *id.*, at ¶ 31 ("[The Lakers], either directly or through its agents, illegally contacted [Emanuel] and the Class members via their cellular telephones by using marketing and text messages, thereby . . . invading the privacy of [Emanuel] and the Class members.").

reconcile this rule with our canon of giving effect to the intent of the parties in light of a clause that broadly excludes coverage for any claim originating from, incident to, or having any connection with, invasion of privacy. A TCPA claim falls within the category of intrusion on the "right to be let alone" recognized under California law as an invasion of privacy. Emanuel's claim is unquestionably, at the very least, connected to an alleged invasion of privacy. Therefore, Federal properly concluded that the claims asserted in the Emanuel complaint were excluded from coverage under the Policy. The dissent's narrow construction of the exclusionary clause conflicts with the clear intent of the contracting parties.

## IV. The Duty to Defend

Finally, the Lakers assert that, even if the Policy did not require Federal to indemnify cost incurred from the Emanuel action, Federal still had a duty to defend the suit from the beginning. In California, an insurer's duty to defend is broad. "An insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005). An insurer first must compare the allegation in the complaint with the terms of the policy to determine whether it must defend an action. *Id.* However, the duty does not stop there. The insurer might also have a duty to defend an action "where extrinsic facts known to the insurer suggest that the claim may be covered." *Id.* In addition, the insurer has a "duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Id.*

While this duty is broad, it is not limitless, and California courts have warned against "misconstru[ing] the principle of 'potential liability' under an insurance policy." *Gunderson v. Fire Ins. Exch.*, 44 Cal. Rptr. 2d 272, 277 (Cal. Ct. App. 1995). More specifically, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Id.* Thus, an insured may not "manufacture coverage" by guessing what other unknown facts or unsupported claims a claimant could possibly assert. *Id.* at 277–78.

The Lakers assert that the Policy potentially entitled them to indemnity, because Emanuel asserted that he suffered multiple harms, not just an invasion of privacy. In addition, the Lakers argue that, because Emanuel only sought "recovery of economic injury" and explicitly swore off "any recovery for personal injury" in his complaint, he did not actually seek relief for invasion of his privacy, which is generally a form of "personal injury."

These statements from Emanuel's complaint regarding economic injury and personal injury cannot overcome the reality that Emanuel asserted two claims for relief, both under the TCPA. As explained above, a TCPA claim is an invasion of privacy claim, regardless of the type of relief sought. Moreover, we will not allow Emanuel to redefine the TCPA by disclaiming any recovery for personal injury. Therefore, Federal would only have had a duty to defend if the facts alleged or known could support a claim other than a TCPA claim. The facts Emanuel asserted are straightforward. He received an unwanted text message from the Lakers and he thought it was sent using an automatic telephone dialing system. The Lakers have not identified what other claim this

set of facts could support. The Lakers have also failed to identify any other relevant facts that were known at the time the Emanuel complaint was filed.

Finally, in the motion to dismiss the Emanuel complaint, the Lakers argued that the text message at issue was not the type of "privacy violation or . . . abusive telemarketing practice that Congress aimed to curb by enacting the TCPA," and that the "[p]olicy at the heart of the TCPA therefore . . . warrants dismissal of [Emanuel's] TCPA claims with prejudice." Defendant's Memorandum in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint or in the Alternative, Motion for Summary Judgment at 10, 13, *Emanuel v. L.A. Lakers, Inc.*, No. 2:12-cv-9936-GW-SH (C.D. Cal. Feb. 25, 2013), ECF No. 17-1. Thus, even the Lakers acknowledged that "[b]y enacting the TCPA, Congress intended to 'protect the *privacy interests* of . . . telephone subscribers by placing restrictions on *unsolicited, automated* telephone calls . . . .'" *Id.* at 3 (emphasis added in brief) (quoting *Satterfield*, 569 F.3d at 954). The Lakers also acknowledged that "[c]ourts have consistently held the TCPA protects a species of privacy interest in the sense of seclusion." Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint or in the Alternative, motion for Summary Judgment, No. 2:12-cv-9936-GW-SH (C.D. Cal. Apr. 4, 2013) ECF No. 19 (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006)). Our decision should not now allow the Lakers to "manufacture coverage" by changing their argument to suggest that the Emanuel complaint could have been amended to divorce itself completely from the "policy at the heart of the TCPA": protecting individuals from abusive privacy invasions.

For all of these reasons, we must conclude that there was no potential that Emanuel could amend his complaint to assert a claim for relief that would be supported by any of the facts alleged or otherwise known.  Federal, therefore, did not have a duty to defend the Lakers against the Emanuel complaint.

## CONCLUSION

Because a TCPA claim is inherently an invasion of privacy claim, Federal correctly concluded that Emanuel's TCPA claims fell under the Policy's broad exclusionary clause.  Accordingly, Federal did not breach the Policy, or the implied covenant of good faith and fair dealing, under any cognizable legal theory, when it declined to defend against or cover the Emanuel complaint.  As there was no cognizable legal theory under which the Lakers could establish that Federal breached the Policy, and there were no known facts to support any other claim for relief, the district court properly dismissed the Lakers' complaint.

**AFFIRMED.**

MURPHY, III,  District Judge, concurring:

I concur with the Court's order affirming the decision below. I write separately because the Court can-and should-decide the question of whether Emanuel's claim arose from an invasion of privacy on narrower grounds. Emanuel alleged several times in his complaint that the message he received was an invasion of his privacy. Those allegations are sufficient to determine that Emanuel's claim arose from an

invasion of privacy. The Court need not hold more broadly that a TCPA claim is inherently an invasion of privacy claim.

---

TALLMAN, Circuit Judge, dissenting:

I thought we were interpreting a statute based on the elements of the cause of action it creates. But Judge Smith, writing for a divided court, insists that we must determine whether Congress enacted the Telephone Consumer Protection Act (the "TCPA") only to prevent invasions of privacy, or whether it also meant to address other concerns. Maj. Op. at 10. I respectfully disagree. When Congress defines a cause of action based on specific and unambiguous statutory elements, what matters is what the statute says—not what motivated enactment of the statute.

Because nothing within the words Congress chose suggests that a TCPA plaintiff must prove invasion of privacy, a TCPA claim is not automatically a privacy claim. And because Emanuel expressly disavowed his privacy claims and instead sought recovery under the TCPA, his claims were not common law privacy claims. They were statutory TCPA claims.

I conclude that Emanuel's claims did not fall under the privacy exclusion of the insurance policy, that Federal Insurance Co. ("Federal") had a duty to defend the Los Angeles Lakers, Inc. (the "Lakers"), and that the district court erred when it dismissed the Lakers' claims.

I

Judge Smith asserts that Congress enacted the TCPA "to protect privacy rights and privacy rights alone," and concludes that a TCPA claim is thus automatically a privacy claim. Maj. Op. at 13–14. In doing so, he refuses to define a TCPA claim by its unambiguous statutory elements, and instead redefines and limits a TCPA claim based on the Act's underlying purpose. This is error.

A

As explained repeatedly by the Supreme Court, "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Cooper Indus. v. Aviall Servs.*, 543 U.S. 157, 167–68 (2004) (alteration omitted) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998)). When a statute is unambiguous, it is "unnecessary for [us] to look to [its] purpose to aid interpretation." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 781 n.5 (9th Cir. 2008) (citing *Cooper Indus.*, 543 U.S. at 157), *abrogated on other grounds by CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014). For this reason, we need not examine the underlying purpose of the TCPA unless we first make a threshold determination that the statute is ambiguous. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

This case involves two provisions of the TCPA. First, 47 U.S.C. § 227(b)(1), in relevant part, makes it unlawful:

> [F]or any person within the United States . . .
> to make any call . . . using any automatic

> telephone dialing system [an "ATDS"] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call.

Second, § 227(b)(3) creates a statutory right to recover for the violation, allowing:

> A person or entity . . . [to] bring . . . an action based on a violation of [the TCPA] or the regulations prescribed under this subsection to . . . recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.

There is no ambiguity here. These provisions create a cause of action and define the damages recoverable from a statutory violation when a plaintiff can prove: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). Our interpretation of the TCPA should therefore "begin[] with the statutory text, and end[] there as well." *BedRoc*, 541 U.S. at 183. There is no need to determine whether Congress only enacted the TCPA to prevent invasions of privacy, or whether it also enacted the TCPA to address other concerns.[1]

---

[1] We have examined the underlying purpose of the TCPA on other occasions, but only after *first* identifying a textual ambiguity. For example, in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), we considered whether the Federal Communications Commission (the "FCC") reasonably interpreted "call" as encompassing "both voice

And yet, without first finding ambiguity, Judge Smith proceeds to examine the underlying purpose of the TCPA. He asserts that Congress only enacted the TCPA to prevent invasions of privacy, and relies on this asserted purpose to conclude that a plaintiff automatically "pleads an invasion of privacy claim" by "pleading the elements of a TCPA claim." Maj. Op. at 14. In so reasoning, he redefines a TCPA claim. But that can't be right. A TCPA claim is already defined by its unambiguous statutory elements—and none of those elements say anything about "privacy."[2]

Even if it were true that Congress only enacted the TCPA to prevent invasions of privacy, *see infra* Part I.B, "statutory prohibitions often go beyond the principal evil" that they were enacted to remedy. *Oncale*, 523 U.S. at 79. For example, although the Racketeer Influenced and Corrupt Organizations Act ("RICO") was enacted "to seek the eradication of organized crime in the United States," *Sedima,*

---

calls and text messages." *Id.* at 949. Only after making the threshold determination that the TCPA was ambiguous because it did not define "call," *id.* at 952, did we examine the underlying purpose of the TCPA, *id.* at 954.

[2] The TCPA does use the word "privacy" in other provisions, but only in the context of *further* rulemaking by the FCC. *See* 47 U.S.C. § 227(b)(2), (c)(1)–(2), (c)(3)(K); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373–74 (2012) (explaining that the TCPA "principally outlaws four practices" but "also directs the FCC to prescribe regulations to protect the privacy of residential telephone subscribers"). If anything, the fact that Congress limited further rulemaking to practices invasive of privacy, but chose not to include that limitation in the statutory cause of action, proves that a TCPA claim is not inherently a privacy claim. *Hardt v. Reliance Standard Life Ins.*, 560 U.S. 242, 252 (2010) ("The contrast between these two [provisions] makes clear that Congress knows how to impose express [privacy] limits . . . .").

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 524 (1985) (Powell, J., dissenting) (citation omitted), a RICO claim is not limited by this underlying purpose.  Instead, a RICO claim is defined by its statutory elements.  So long as a RICO plaintiff can prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *id.* at 496, he does not need to prove that the defendant was involved in organized crime, *see id.* at 525 (Powell, J., dissenting) (noting that a RICO claim may involve only "garden-variety fraud and breach of contract").  In the same way, so long as a TCPA plaintiff can prove (1) a call (2) using an ATDS (3) without prior express consent, *Meyer*, 707 F.3d at 1043, he does not need to prove that the defendant invaded his privacy.

In sum, Judge Smith errs by redefining a TCPA claim as a privacy claim and then invoking the contractual exclusion to deny insurance coverage.  We should instead faithfully adhere to the words of the Act, which defines a TCPA claim by unambiguous statutory elements saying nothing about privacy.

B

Moreover, although there is no need to examine the underlying purpose of the TCPA, it is simply not true that Congress only enacted the TCPA to prevent invasions of privacy.  The TCPA specifically addresses public safety concerns, provides redress for economic injury, and protects businesses from ATDS calls.

First, regarding public safety, § 227(b)(1)(A)(i) specifically prohibits the use of an ATDS to call an emergency telephone line.  Congress did not include this provision to protect law enforcement personnel and health

care providers from invasions of privacy. Instead, Congress included this provision to protect the public, recognizing that the use of an ATDS poses "a risk to public safety" if "an emergency or medical assistance telephone line is seized." H.R. Rep. No. 102-317, at 2 (1991). Imagine calling 911 for help and getting a busy signal.

Second, the TCPA provides redress for economic injury. Section 227(b)(3) allows a plaintiff to recover "actual monetary loss" when that loss is higher than the fixed statutory award of $500 per negligent violation and $1,500 per intentional violation. If Congress only enacted the TCPA to protect against invasions of privacy, the fixed statutory award would be sufficient. *See Universal Underwriters Ins. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (explaining that the statutory award accounts for "hard-to-quantify" damages). But because the TCPA specifically allows recovery for "actual monetary loss," it is clear that Congress was also concerned about the economic injury caused by ATDS calls. *See Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) (recognizing that "an automated call to a cell phone adds expense to annoyance"); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (noting that ATDS calls "can be costly").

Judge Smith asserts that "actual monetary loss" is only available because the plaintiff suffered an invasion of privacy. Maj. Op. at 15–16. Not so. The TCPA creates a legal right and elevates a "previously inadequate" injury—the receipt of an ATDS call without prior express consent—to a "legally cognizable injur[y]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992). Significantly, a plaintiff may be

able to prove violation of the TCPA—that he received an ATDS call without prior express consent—even if he is unable to prove invasion of privacy by showing that he had "a reasonable expectation of privacy" and the alleged conduct was "highly offensive to a reasonable person." *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007) (citation omitted).[3] The TCPA provides redress for economic injury regardless of whether a plaintiff suffered an invasion of privacy because Congress chose not to include a privacy element.

Third and finally, Congress enacted the TCPA to protect businesses from ATDS calls. The TCPA specifically allows any "person *or entity*" that receives a call, text, or fax in violation of the TCPA to bring a claim for damages or injunctive relief. 47 U.S.C. § 227(b)(3) (emphasis added). Congress used this language because it recognized that businesses may be harmed by ATDS calls. And because "[m]ost states hold that business entities lack privacy interests," *Am. States Ins. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 942 (7th Cir. 2004) (citation omitted),[4] it is not surprising that Congress cited harms unrelated to invasion of privacy. For example, Congress recognized that ATDS calls tie "up all the lines of a business and prevent[]

---

[3] For example, in *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016), the court concluded that a plaintiff "adequately plead[ed]" a TCPA violation, *id.* at \*5, but did not adequately plead "the harassment that constitutes an invasion of privacy," *id.* at \*8.

[4] California is one of these states. *See Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 20 Cal. Rptr. 2d 376, 391 (Ct. App. 1993).

any outgoing calls" and generally pose "an impediment to interstate commerce."  S. Rep. No. 102-178, at 2 (1991).**[5]**

Although we do not need to examine the underlying purpose of the TCPA, these examples demonstrate beyond cavil that Congress did not enact the TCPA only to prevent invasions of privacy.  Not all TCPA claims are privacy claims.

## II

The proper inquiry here is not whether a TCPA claim is automatically based on invasion of privacy, but whether the underlying claims in this particular case are based on invasion of privacy.  Because I conclude that Emanuel's claims are not privacy claims, I would reinstate the Lakers' claims for breach of the insurance contract and for bad faith.

## A

The Lakers argue that Federal had a duty to defend against the Emanuel action because the policy imposed a duty to defend against claims alleging "wrongful acts."  We interpret the "wrongful acts" coverage clause "broadly so as to afford the greatest possible protection" to the Lakers. *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal.

---

**[5]** Other courts have allowed corporations to bring claims under the TCPA, which would be impermissible if all TCPA claims were limited to invasion of privacy.  *See, e.g.*, *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) (allowing a corporation to bring suit alleging violation of the TCPA's "junk fax" provision); *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 743–44 (N.D. Ill. 2007) ("[C]orporations bringing claims under the TCPA may only assert the property interests [that] the TCPA was designed to protect.").

2003) (citation omitted).  The Lakers argue that Emanuel alleged they committed a wrongful act by sending a text message in violation of the TCPA.

Federal, on the other hand, argues that it had no duty to defend the Lakers because the policy excluded claims "based upon, arising from, or in consequence of . . . invasion of privacy."  We interpret this exclusionary clause narrowly against Federal, *see id.*, but we give it due effect when a claim is in fact based on invasion of privacy.[6]  Federal primarily argues that Emanuel's claims are based on invasion of privacy because all TCPA claims are based on invasion of privacy.  Although Judge Smith would decide the case on this ground, I do not accept this theory.  *See supra* Part I.  Federal also argues that Emanuel's claims are based on invasion of privacy because Emanuel alleged that the Lakers invaded his privacy.  Although Judge Murphy would decide the case on this alternative ground, I do not accept that theory either.

It is true that Emanuel twice alleged that the Lakers invaded his privacy,[7] *see* Maj. Op. at 16 n.6, but he did not seek recovery on this basis.  Instead, he sought recovery for

---

[6] This distinction between a coverage clause and an exclusionary clause distinguishes our case from other cases comparing a TCPA claim to a claim based on invasion of privacy.  For example, in *Universal Underwriters*, the policy provided coverage for claims based on invasion of privacy.  401 F.3d at 882.  The court read this coverage clause broadly and concluded that "unsolicited fax advertisements" qualified as "'invasions of privacy' under ordinary, lay meanings of these phrases." *Id.* at 881.  Here, by contrast, the policy *excludes* claims based on invasion of privacy.  The privacy clause should therefore be read narrowly against Federal.

[7] The complaint also discussed invasion of privacy when it discussed the underlying purpose of the TCPA.

an alleged violation of the TCPA, and expressly disavowed his privacy claims. I therefore conclude that Federal had a duty to defend the Lakers against the Emanuel action, and the district court erred by dismissing the Lakers' claim for breach of contract.

First, Emanuel did not seek recovery based on invasion of privacy. *Cf. ACS Sys., Inc. v. St. Paul Fire & Marine Ins.*, 53 Cal. Rptr. 3d 786, 794–95 (Ct. App. 2007) (dismissing a complaint that included both a TCPA claim and a common law privacy claim). Although Emanuel alleged that the Lakers invaded his privacy, he did not seek recovery on the theory that the Lakers portrayed him in a false light in the public eye, disclosed "true, embarrassing private facts" about him, or appropriated his "name or likeness for commercial purposes." *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 118 Cal. Rptr. 370, 375 (Ct. App. 1974) (describing types of privacy claims). Nor did he seek recovery on the theory that he had "a reasonable expectation of privacy" in his cellular telephone number and the Lakers' confirmation text was "highly offensive to a reasonable person." *Taus*, 151 P.3d at 1212; *cf.* Maj. Op. at 19 (equating a TCPA claim with a claim for invasion of privacy by intrusion upon seclusion). Instead, Emanuel drafted an 11-page complaint that alleged facts mirroring the statutory elements of a TCPA claim and sought recovery for violation of the Act.

Second, Emanuel expressly disavowed all claims based on invasion of privacy. His complaint specifically sought "only damages and injunctive relief for recovery of economic injury," including certain cellular telephone charges and reduced cellular time. First Am. Compl. ¶ 32, *Emanuel v. L.A. Lakers, Inc.*, No. 2:12-cv-9936 GW (SHx) (C.D. Cal. Feb. 8, 2013), ECF No. 15. His complaint also stated that it

was "expressly . . . not intended to request any recovery for personal injury and claims related thereto." *Id.* The parties agree that a claim for invasion of privacy is a personal injury claim. *See* Hon. H. Walter Croskey et al., California Practice Guide: Insurance Litigation § 7:128 (The Rutter Group 2015) (explaining that personal injury includes "certain enumerated 'offenses,' including . . . invasion of privacy"). Thus, the complaint expressly disavowed claims based on common law invasion of privacy.

Because Emanuel only sought recovery based on an alleged violation of the TCPA, *see Lujan*, 504 U.S. at 578, and expressly disavowed claims based on invasion of privacy, Federal had a duty to defend the Lakers against the Emanuel action.

B

After the district court dismissed the Lakers' claim for breach of contract, it also dismissed the Lakers' claim for breach of the implied covenant of good faith and fair dealing. *See Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("[W]ithout a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." (quoting *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 638–39 (Cal. 1995))). Because I conclude that Federal had a duty to defend the Lakers, I next consider whether the district court erred by dismissing the Lakers' claim for bad faith.

To establish a claim for bad faith "a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins.*, 237 F.3d 987, 992

(9th Cir. 2001) (citing *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 255 (Ct. App. 1990)).

The Lakers properly allege that Federal withheld benefits due under the policy. *See supra* Part II.A. The Lakers also allege that Federal withheld benefits without proper cause. Specifically, the Lakers allege that Federal refused to defend simply because Emanuel used the term "invasion of privacy" in his complaint.

It would be unreasonable for Federal to deny coverage based on a passing reference to the term "invasion of privacy." An insurer may not rely on "the labels given to the causes of action" in a complaint, and must instead determine whether "the alleged facts or known extrinsic facts . . . reveal a possibility that the claim may be covered by the policy." *Atl. Mut. Ins. v. J. Lamb, Inc.*, 123 Cal. Rptr. 2d 256, 268 (Ct. App. 2002) (emphasis omitted). Therefore, because we must accept as true the Lakers' allegation that Federal denied coverage based on a passing reference to the term "invasion of privacy," *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994), I would also reinstate the Lakers' claim for bad faith.[8]

---

[8] However, if Federal demonstrates that it actually denied coverage because it concluded that all TCPA claims are privacy claims, the district court would likely be required to grant summary judgment on the Lakers' bad faith claim. *See Feldman v. Allstate Ins.*, 322 F.3d 660, 669 (9th Cir. 2003) ("Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was a 'genuine dispute as to coverage.'" (quoting *Guebara*, 237 F.3d at 992)). Given the fact that reasonable judicial minds are in disagreement as to the nature of a TCPA claim, Federal may well have had a valid, good faith basis for denial of coverage.

III

When a cause of action is defined by specific and unambiguous statutory elements, there is no need to redefine or restrict that cause of action based on the underlying purpose that motivated its enactment. In its decision today, the court errs by rejecting the statutory elements chosen by Congress and redefining a TCPA claim as a narrowly restricted privacy claim. Because Emanuel sought recovery based on an alleged violation of the TCPA, and did not seek recovery based on invasion of privacy, I would reverse the district court's order dismissing the Lakers' claims.

I respectfully dissent.