

**FILED**

SEP 05 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-17-1156-TaLB |
| MICHAEL BRUCE STONE, | Bk. No. 2:12-bk-17527-MKN |
| Debtor. | Adv. No. 2:16-ap-01081-MKN |
| MICHAEL BRUCE STONE, | |
| Appellant, | |
| v. | MEMORANDUM* |
| STATE BAR OF CALIFORNIA; STATE BAR COURT OF CALIFORNIA; SUPREME COURT OF CALIFORNIA, | |
| Appellees. | |

Argued and Submitted on July 27, 2018
at Las Vegas, NV

Filed – September 5, 2018

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Bankruptcy Judge, Presiding

———————

Appearances:     Appellant Michael Bruce Stone argued pro se; Marc
Aaron Shapp of the Office of General Counsel, State Bar
of California, argued for appellees the State Bar of
California and the State Bar Court of California; Thomas
D. Dillard, Jr. of Olson, Cannon, Gormley, Angulo &
Stoberski on brief for appellee the Supreme Court of
California.

———————

Before: Taylor, Lafferty, and Brand, Bankruptcy Judges.


## INTRODUCTION

Michael Stone practiced law in California for several decades. At
some point, he ran into financial trouble, filed bankruptcy, and received a
chapter 7[1] discharge. But both before his bankruptcy and after, he also
faced disciplinary action by the State Bar. The charges were numerous and
the path to resolution was long, but, among other things, he stipulated to
return unearned fees to clients. The Supreme Court of California then

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532 and all "Civil Rule" references are to the
Federal Rules of Civil Procedure.

2

entered judgment consistent with the stipulation and required him to file a compliance statement evidencing timely refund of the unearned fees with the State Bar.

Stone eventually refunded all the unearned fees, but he did not do so timely. And, as a result, he did not timely file the appropriate compliance statement. So the State Bar brought new disciplinary charges; the State Bar Court recommended discipline that included a two-year actual suspension; the State Bar Court Review Department agreed and forwarded a recommendation to the Supreme Court of California.

In the meantime, the Ninth Circuit issued an opinion discussing the dischargeability, under § 523(a)(7), of debts attorneys owe their clients on account of fee disputes. On Stone's read, the decision meant that the unearned fees he refunded were discharged and, as a result, that he was suspended for failure to pay discharged debts in violation of § 525(a). He notified the California Supreme Court of both his position and the Ninth Circuit's decision, but it nevertheless suspended him from the practice of law.

Stone then filed an adversary complaint and alleged that the suspension contravened § 525(a). The bankruptcy court disagreed: because Stone's complaint alleged that he was suspended for two reasons (failure to timely file a certificate and failure to timely refund the unearned fees) it found no violation of § 525(a). It also concluded that it lacked jurisdiction

3

over part of Stone's complaint.

The bankruptcy court was correct in both respects. Under § 525(a), the failure to pay a discharged debt must be the sole reason for the suspension; here nonpayment was not the sole reason for the suspension. And the *Rooker–Feldman* doctrine barred review to the full extent requested by Debtor's complaint. Accordingly, we AFFIRM.

## FACTS

Stone was admitted to the California Bar in 1992. He apparently practiced law without incident for some time.

**The initial disciplinary proceedings and the chapter 7 case.** In 2011, Stone stipulated to findings of misconduct concerning five client matters. In April, he stipulated to findings of misconduct in three client matters, including improper withdrawal from employment and failure to return unearned fees and to pay court-ordered sanctions. He agreed to a private reproval with conditions for one year, including payment of $3,651.50 in restitution. In November, he stipulated to findings of misconduct in two other client matters. The stipulation acknowledged further improper withdrawal from employment and failure to return deposits held in trust, failure to provide an accounting, and failure to return an unearned fee. This time, he agreed to a public reproval with conditions for two years that included mandatory fee arbitration with clients.

In 2012, Stone filed a pro se chapter 7 petition. The chapter 7 trustee

4

issued a report of no distribution, and Stone received a discharge.

**The 2013 disciplinary proceedings.** In 2013, Stone faced new disciplinary charges. He admitted culpability and stipulated that he failed to comply with the reproval conditions in his earlier disciplinary cases in multiple respects. More specifically, he did not submit quarterly reports to the probation department and failed to prove that he: attended trust accounting school and ethics school and passed the relevant tests; paid restitution or complied with fee arbitration conditions; and passed the MPRE. At this point, he agreed to a two-year stayed suspension and two years of probation with conditions, which included that he serve a 90-day suspension until he provided restitution and complied with California Rule of Court 9.20 ("Rule 9.20"). Stone and the State Bar negotiated and agreed upon the stipulation—as Stone put it in his amended complaint, they agreed "especially on the subject of restitution to [sic] as a condition of probation."

In August 2013, the Supreme Court of California entered a judgment consistent with the stipulation. The judgment ordered Stone to comply with Rule 9.20, make restitution or reimburse the State Bar's Client Security Fund for two creditors, refund all unearned fees, and file a declaration saying he had done so. The judgment stated: "Failure to do so may result in disbarment or suspension."

**Stone's non-compliance with the judgment and the resulting disciplinary proceeding.** Stone's compliance with the judgment was less than exact.

The declaration was due on October 31, 2013. But on that date he was "unable to file a truthful declaration that he had paid the debts . . . ." Nevertheless, he filed a declaration. It was rejected. He later filed a second and third declaration, but both were rejected.

At some point between October 31, 2013 and February 20, 2014, Stone paid his stipulated obligations in full and with interest. So from Stone's perspective, he had "satisfactorily completed two years probation, and complied with the express restitutionary conditions of probation by paying" the two creditors "within the probationary period."

Despite this "compliance," on February 21, 2014, the State Bar initiated disciplinary charges against Stone. The disciplinary charges "alleg[ed] that [Stone] violated *Cal. Rule of Court* 9.20(c) by failing to 'refund all unearned fees' and to also file a declaration that he had done so, all by October 31, 2013."

These new disciplinary proceedings "resulted in findings that [Stone] was culpable for violating *Cal. Rule of Court* 9.20(c) and imposing discipline on [Stone] including, inter alia, a two-year actual suspension from the practice of law."

More particularly, the State Bar Court "found that [Stone] violated

6

Rule 9.20(c) by not timely refunding all unearned fees and by not then certifying that he had done so." It recommended that Stone's law license be suspended for two additional years.

The State Court Review Department affirmed. Stone "did not choose to seek discretionary review of the decision of the State Bar Court Review Department." According to Stone, the case "would have ended there" but for a Ninth Circuit opinion.

That opinion is *Scheer v. State Bar (In re Scheer)*, 819 F.3d 1206 (9th Cir. 2016). Before *In re Scheer*, according to Stone, "both [Stone] and [the] State Bar reasonably believed and assumed that debts owed by attorneys to clients for unearned fees were nondischargeable, or that the discharge of such debts did not impair the ability of [the] State Bar to impose disciplinary sanctions against attorneys for not paying them." But, on Stone's read, the Ninth Circuit's *In re Scheer* decision made his suspension inappropriate because it held "that debts owed by attorneys to clients for unpaid fees are dischargeable in bankruptcy. . . ."

Shortly thereafter, Stone sought a stay with the California Supreme Court so "he could request that the matter be remanded to the State Bar for further proceedings consistent with *Scheer*." But in June 2016 and as alleged in Stone's amended complaint, the California Supreme Court denied Stone's request for a stay, "ratified the findings of the State Bar Court[,]" and "ordered, inter alia, that [Stone] be suspended from practicing law for

7

at least two years."

**Debtor files an adversary complaint.** Having not prevailed at the California Supreme Court, Stone reopened his bankruptcy case and filed an adversary complaint against the State Bar of California, the State Bar Court of California (with the State Bar, the "State Bar Entities"), and the Supreme Court of California. He later amended the complaint.

The amended complaint does not identify any specific claims for relief. But it asserts that the California Supreme Court's suspension of his law license violated § 525(a). He alleges that this is so because: "[t]here exists no substantive distinction between failing to pay a debt and failing to make a declaration that the debt was paid." As a result, he alleges, the disciplinary charges were "based solely upon failure to pay debts that were previously discharged . . . ."

The prayer requests a wide range of relief. It seeks: first, declaratory relief that his 2012 bankruptcy case discharged three debts; second, an order requiring the Supreme Court of California and the California State Bar Court to "dismiss, expunge, and vacate" the State Bar disciplinary proceedings; and finally, a laundry list of other relief, including alteration of his disciplinary records and damages.

The State Bar Entities moved to dismiss; the California Supreme Court joined. The bankruptcy court issued a twelve-page memorandum decision granting the motion to dismiss without leave to amend under

Civil Rule 12(b)(1) and (b)(6). It later entered a separate judgment of dismissal. Stone timely appealed.

## JURISDICTION

Subject to the discussion below, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in dismissing the adversary complaint under Civil Rule 12(b)(1) and (b)(6)?

Did the bankruptcy court abuse its discretion in dismissing the adversary complaint without leave to amend?

## STANDARD OF REVIEW

We review de novo the dismissal of an adversary proceeding under Civil Rule 12(b)(1) and (b)(6). *See Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018). We review dismissal without leave to amend for abuse of discretion. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (*citing United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). And we may affirm on any basis in the

9

record. *Bill v. Brewer*, 799 F.3d 1295, 1299 (9th Cir. 2015).

## DISCUSSION

"It is well established that the purpose of State Bar proceedings is not punitive but protective of the public, thereby preserving its confidence in the legal profession." *Bach v. State Bar*, 43 Cal. 3d 848, 856–57 (1987) (quoting *Warner v. State Bar*, 34 Cal. 3d 36, 43 (1983)). And this case squarely addresses issues essential to public confidence; it involves California Rule of Court 9.20, which imposes duties on disbarred, resigned, or suspended attorneys.

Rule 9.20(a) states that the California Supreme Court may include in a disbarment or suspension order a direction that the lawyer must refund unearned fees within time limits prescribed by the Supreme Court. Cal. Rule of Court 9.20(a). And Rule 9.20(c) directs attorneys to provide proof of compliance:

> Within such time as the order may prescribe after the effective date of the member's disbarment, suspension, or resignation, the member must file with the Clerk of the State Bar Court an affidavit showing that he or she has fully complied with those provisions of the order entered under this rule.

Cal. Rule of Court 9.20(c). So we begin with an acknowledgment that a lawyer may be required to make payment to a client even if the client has not liquidated the matter to judgment. And we observe that requiring that the client be made whole is consistent with establishing public confidence

10

in the legal profession.

**A.    Stone's amended complaint must state a claim upon which relief may be granted.**

**Civil Rule 12(b)(1).** When reviewing a Civil Rule 12(b)(1)[2] motion to dismiss for lack of jurisdiction, including one based on *Rooker–Feldman*, "we take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

**Civil Rule 12(b)(6).** A motion to dismiss under Civil Rule 12(b)(6)[3] challenges the sufficiency of the allegations set forth in the complaint and "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). The factual allegations in the complaint must state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[4]

Thus, based on the *Iqbal*/*Twombly* rubric, the bankruptcy court must

---

[2] Civil Rule 12(b)(1) is applied in adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b).

[3] Civil Rule 12(b)(6) is applied in adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b).

[4] In his opening appellate brief, Stone cites *Conley v. Gibson*, 355 U.S. 41, 78 (1957) and its "no set of facts" test as the relevant Civil Rule 12(b)(6) standard. But the Supreme Court abrogated *Conley*'s "no set of facts" language in *Bell Atlantic Corporation v. Twombly*. 550 U.S. at 560–63.

first identify bare assertions that "do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation[,]" and discount them from an assumption of truth. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Then, if there remain well-pleaded factual allegations, the bankruptcy court should assume their truth and determine whether the allegations "and reasonable inferences from that content" give rise to a plausible claim for relief. *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft*, 556 U.S. at 679.

**Considering extrinsic materials.** Generally, courts "may not consider material outside the pleadings when assessing the sufficiency of a complaint" under Civil Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, --- F.3d ---, No. 16-56069, 2018 WL 3826298, at *5 (9th Cir. Aug. 13, 2018). There are, however, "two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* at *6. Each theory allows a court to consider material outside a complaint, but "each does so for different reasons and in different ways." *Id.*

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at *9. It "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that

weaken—or doom—their claims." *Id.* Although the mere mention of a document does not incorporate it, a "defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (internal quotation marks omitted). In contrast to judicial notice, a "court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under [Civil] Rule 12(b)(6).' " *Id.* at *10 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).[5] *But see id.* ("While this is generally true, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

Here, the State Bar Entities provided the bankruptcy court with copies of documents from the various disciplinary proceedings and—conflating the two exceptions—asked it to take judicial notice of them because they were referred to in the complaint. The bankruptcy court said it could consider them but found it unnecessary to do so. Stone argues on appeal that we should not review the materials.

---

[5] *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." (some internal quotation marks omitted) (citations omitted) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706–07 (9th Cir. 1998))).

13

We disagree with Stone. The disciplinary proceedings form the basis of Stone's complaint. And the complaint refers extensively to the 2014 proceedings—the trial court's decision, the review department's decision, Stone's request for a stay, and the Supreme Court of California's judgment. Nor does Stone contest the documents' authenticity. Finally, in his complaint, Stone explicitly states that he chose to not seek discretionary review of the State Bar Court Review Department's decision. Admittedly, however, the documents are not the basis for our affirmance; review merely underscores the appropriateness of our decision.

## B.    The bankruptcy court correctly dismissed the amended complaint.

**It is unclear if the matter is moot.** Mootness lurks in the background of this case. As alleged, Stone is suspended from the practice of law in California for two reasons: administratively, for failure to pay child support; and also for disciplinary reasons. In his amended complaint, Stone alleges that the disciplinary suspension contravenes § 525(a), but he does not challenge the administrative suspension.

The amended complaint further alleges that in June 2016 the California Supreme Court suspended Stone for "at least two years." The State Bar Entities represent in their answering brief on appeal that on "June 8, 2016, the California Supreme Court entered an order suspending Stone from the practice of law for two years." State Bar Entities' Br. at 5–6. That time period expired on June 8, 2018.

14

Ordinarily, when a party challenges a time period that has expired, we conclude that the challenge is moot because we cannot provide effective relief. *See Fernandez v. GE Capital Mortg. Servs. (In re Fernandez)*, 227 B.R. 174, 178 (9th Cir. BAP 1998).

So to the extent Stone challenges a now-expired two-year suspension, we would lack any ability to give him effective relief; put differently, if the only remaining impediment to Stone's practicing law is the administrative suspension, we cannot afford him relief.

That said, neither party quite captured the terms of the Supreme Court of California's judgment suspending Stone. The California Supreme Court suspended Stone from the practice of law for *three* years but immediately stayed execution of that suspension. It then placed him on probation for *three* years subject to conditions: first, Stone "is suspended . . . for a minimum of the first two years of probation, and he will remain suspended until he provides proof to the State Bar Court of his rehabilitation, fitness to practice and present learning and ability in the general law[]"; second, Stone must comply with the State Bar Court Review Department's probation recommendations; and third, if Stone has complied with all probation conditions, the period of stayed suspension will be satisfied and the suspension terminated at the end of the probation period.

In short, to the extent Stone alleges that his disciplinary suspension

15

contravened § 525(a) and seeks reinstatement of his license, his request might be moot if he has already successfully completed probation. But he was placed on probation for three years, not two, and the three-year time period has not yet expired. At oral argument, neither party provided us with adequate information about the status of Stone's suspension; Stone also asserted that his suspension has collateral consequences beyond just his admission to the practice of law in California. Given this uncertainty about whether the matter is moot and because we might be able to afford effective relief, we proceed to the merits.

**The *Rooker-Feldman* doctrine bars much of the requested relief.** The *Rooker–Feldman* doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). "Stated simply, the *Rooker–Feldman* doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)).

As the Ninth Circuit instructs, we distinguish suits that are de facto appeals barred by *Rooker–Feldman* from suits barred by other preclusion principles as follows:

16

A suit brought in federal district court is a "de facto appeal" forbidden by *Rooker–Feldman* when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision. In contrast, if a plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction.

*Id.* (internal quotation marks and citations omitted).

Here, the bankruptcy court held that the *Rooker–Feldman* doctrine barred part of the requested relief:

[I]t is clear that any interference by this court with the disciplinary determinations of the State Bar Court or the Supreme Court runs afoul of the Rooker-Feldman Doctrine. As previously discussed, the disciplinary proceeding was based on two violations of [Rule] 9.20(c) and was not limited to repayment of a discharged debt. While Debtor may believe that his failure to comply with the timely reporting requirement was excusable, the merits of his assertion was determined by the State Bar Court and Supreme Court. By the prayer of the instant Complaint, Debtor seeks to overturn the decisions of the State Bar Court and Supreme Court and vacate the resulting discipline. The Rooker-Feldman doctrine clearly bars such a result.

May 1, 2017 Order on Defendant the State Bar of California and the State Bar Court of California's Motion to Dismiss First Amended Complaint to Determine Dischargeability of Certain Debts and For Other Relief ("Mem. Dec.") at 10–11.

On appeal, Stone argues that the bankruptcy erred because the

*Rooker-Feldman* doctrine does not apply:

> In this case, appellant contends that his right to protection from discrimination on account of his being a Debtor, under 11 U.S.C. § 525(a), relates back to his 2012 bankruptcy discharge and predates the 2014-2016 State Bar Court and Supreme Court proceedings. The "exact injury" which existed prior in time is the risk that one's bankruptcy discharge will not be recognized.

Appellant's Opening Br. at 5.

But Stone misreads the bankruptcy court's reasoning; it is not so broad. The bankruptcy court did not conclude that the *Rooker-Feldman* doctrine prevented Stone from asserting a § 525(a) claim. Instead, the bankruptcy court noted that the amended complaint requested broad-reaching relief and concluded that such relief was inappropriate. Ultimately, however, Stone seems to recognize that his remedy is limited. Appellant's Opening Br. at 6 ("Appellant seeks only statutory remedies under 11 U.S.C. § 525(a)."). And at oral argument, Stone clarified that he was not seeking monetary damages. In short, Stone has on appeal stated an intent to confine his relief to statutory remedies.

To be clear, however, we agree with the bankruptcy court's conclusion that the *Rooker-Feldman* doctrine bars much of the requested relief. Stone's complaint asked the bankruptcy court to compel the State Bar to alter and purge its administrative records, to not consider particular information in any future disciplinary proceedings, and to compel the California Supreme Court to vacate the disciplinary proceeding and its

resulting judgment. The bankruptcy court correctly refrained from disturbing the State Bar's disciplinary records and second guessing the California Supreme Court's disciplinary decision. *Scheer v. Kelly*, 817 F.3d 1183, 1186 (9th Cir. 2016).[6]

**The amended complaint fails to state a claim under § 525(a)(5).** Section 525(a)(5) provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license to . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor . . . has not paid a debt that is dischargeable in the case under this title . . . ." 11 U.S.C. § 525(a)(5). As the Supreme Court put it: "Section 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation—the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the trigger may be." *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 301–02 (2003).

The bankruptcy court concluded that, accepting the allegations in the amended complaint as true, there was "no basis for finding a violation of

---

[6] Stone sought a stay with the Supreme Court of California and indirectly asserted that § 525(a) might apply to his case. The Supreme Court of California denied the stay and suspended Stone from the practice of law; it is unclear if, in doing so, the Supreme Court concluded that § 525(a) was inapplicable—it has engaged with § 525(a) questions in the past, *e.g.*, *Kwasnick v. State Bar*, 50 Cal. 3d 1061 (1990), *Hippard v. State Bar*, 49 Cal. 3d 1084 (1989), *Brookman v. State Bar*, 46 Cal. 3d 1004 (1988)—but to the extent it did, Stone's de facto appeal of that conclusion may be barred by *Rooker–Feldman*.

Section 525(a)." Mem. Dec. at 10. We agree.

We start with the text of the amended complaint. As the bankruptcy court noted, the amended complaint alleges that Stone was suspended for violating Rule 9.20(c) in *two* ways: first, not timely repaying the unearned fees; and second, not timely filing a compliant declaration. So, if paragraphs 11, 23, and 33 of the Complaint are true, then Stone's failure to repay unearned fees was *not* the sole reason for the suspension. Mem. Dec. at 10. Instead, the amended complaint alleges that Stone was suspended "for the additional reason that he failed to comply with the separate reporting requirement included in [Rule] 9.20(c)." *Id.* As *Nextwave Personal Communications*, a case Stone cites, explains, the "failure to pay a dischargeable debt *must alone* be the proximate cause of the cancellation . . . ." 537 U.S. at 301 (emphasis added). So the amended complaint does not state a claim for relief; dismissal was proper.

We now consider the gravamen of Stone's position: his allegation that *In re Scheer* changed the applicable legal landscape. This is a legal conclusion; we need not, and do not, accept it as true.

To start, Stone fancifully reinterprets the nature of his disciplinary proceedings; he argues that he "was disciplined for no other reason than for violating Rule 9.20 as to certain debts that appellant contends he can prove were then discharged." Appellant's Opening Br. at 5. But this was not Stone's first brush with the State Bar. As he admits in his complaint, he

20

had been disciplined before. And the documents he refers to in his complaint make clear the wide range of his disciplinary problems. And both the State Bar Court trial judge and State Bar Court Review Department viewed Stone's previous discipline as aggravating factors that weighed toward disbarment. So Stone's focus on only the most recent disciplinary case is misplaced, and his account for why he was suspended (failure to pay a discharged debt) is not plausible. Given his disciplinary history, Stone's rehabilitation is paramount. Indeed, at the time of the suspension, he had made the required payments. As a result, it is implausible to assume that the State Bar Entities were using suspension to obtain payment of a discharged debt; the only plausible conclusion is that they suspended Stone because his pattern of behavior, which included failing to timely make a stipulated payment, evidenced a lack of rehabilitation.

Consistent with this view, the State Bar Court hearing judge found that Stone failed to file a declaration of compliance under Rule 9.20; Stone did not contest that culpability finding; and the State Bar Court Review Department adopted it as fully supported by the record. A wilful Rule 9.20 violation is cause for either suspension or disbarment. Cal. Rule of Court 9.20(d). Stone alleged an excuse. But as the bankruptcy court noted: "While Debtor may believe that his failure to comply with the timely reporting requirement was excusable, the merits of his assertion was determined by

21

the State Bar Court and Supreme Court [of California]." Mem. Dec. at 10–11. Namely, Stone could have, but did not, seek an extension of time to comply. Again, it is not plausible that the *sole* reason for Stone's suspension was his nonpayment of allegedly discharged debt. Complying with deadlines, or seeking extensions of them, is part of the practice of law—Stone failed to do either at a time where the consequences could not be more severe or personal.

Further, even assuming Stone's obligations to his former clients were discharged, the amended complaint does not present a plausible claim for relief under § 525(a) because Stone *consented* post-discharge to the treatment he now questions. After his 2012 discharge, he negotiated conditions of discipline with the State Bar. As part of those negotiations (perhaps in exchange for concessions from the State Bar and as an alternative to other sanctions), Stone stipulated that he would repay unearned fees to former clients—that is, he agreed that he would make restitution. Nothing prevents chapter 7 debtors from voluntarily repaying debts despite a discharge of personal liability. 11 U.S.C. § 524(f). So Stone breached his stipulated agreement with the State Bar by not punctiliously adhering to the conditions of his probation—the conditions that he, after receiving a discharge, agreed to comply with. Unsurprisingly, the State Bar instituted new disciplinary proceedings, resulting in Stone's suspension.

In addition, the California Supreme Court has authorized the State

Bar to consider restitution efforts as indicative of rehabilitation. *Hippard*,

49 Cal. 3d at 1088 ("We hold that petitioner's discharge in bankruptcy of

indebtedness to clients arising from misconduct did not preclude the

State Bar from considering, as an indicator of rehabilitation, petitioner's

efforts, if any, to make restitution . . . .").[7]

These points, cumulatively, distinguish *In re Scheer*. In that case, after

arbitration, an attorney owed a client money for unearned fees; the state

bar, at the presiding arbitrator's request, administratively suspended the

attorney from the practice of law for her failure to pay. 819 F.3d at 1208–09.[8]

The attorney filed bankruptcy, received a discharge, and brought a § 525(a)

---

[7] *See also Brookman*, 46 Cal. 3d at 1008 ("As we noted recently in *Kent v. State Bar* (1987) 43 Cal. 3d 729, 736 [239 Cal. Rptr. 77, 739 P.2d 1244], the purpose of attorney discipline is not to penalize petitioner merely for having obtained a discharge of his debt in bankruptcy. Instead, it is to protect the public from specified professional misconduct (see ante, fn. 1), and at the same time to rehabilitate the errant attorney. Section 525(a) of the Bankruptcy Act [sic] precludes suspension of a license to practice law 'solely because' an attorney has failed to pay a debt that was discharged in bankruptcy, but it does not preclude suspension for professional misconduct that happened to culminate in the attorney's bankruptcy. Nor, contrary to petitioner's position, does section 525(a) appear to preclude restitution ordered as a condition of properly imposed suspension and probation. Such restitution is not imposed 'solely because' the attorney has failed to pay a debt discharged in bankruptcy; instead, it is imposed in order to protect the public and to help rehabilitate the State Bar member.").

[8] The California Business and Professions Code provides for arbitration of certain attorneys' fee disputes. Cal. Bus. and Prof. Code § 6200 *et seq.* If an award is entered against an attorney, California Business and Professions Code § 6203(d) provides for the state bar to "enforce the award, judgment or agreement by placing the attorney on involuntary inactive status until the refund has been paid." Cal. Bus. & Prof. Code § 6203(d).

action seeking reinstatement of her law license. *Id.* at 1209. The bankruptcy court concluded that the debt was nondischargeable under § 523(a)(7). *Id.* The Ninth Circuit disagreed; it held that § 523(a)(7) did not render nondischargeable a debt an attorney owed a client for unearned fees. *Id.* at 1212. The unearned fees were not "assessed for disciplinary reasons." *Id.* at 1211. "Rather, the debt at issue was effectively the amount [the attorney] improperly received from a client, but did not pay back." *Id.*

Here, the State Bar brought disciplinary charges against Stone and suspended him because of professional misconduct. Stone's obligation to pay restitution arose out of the disciplinary case where he, post-discharge, agreed to pay restitution as a condition of his discipline. In *In re Scheer*, by contrast, the State Bar suspended the attorney in an enforcement or collection capacity, and the debt "was not disciplinary." *Id.*

In sum, the bankruptcy court's logic is sound and correct: to bring a § 525(a) action, the failure to pay discharged debts must be the sole reason for the license suspension; the amended complaint alleges that Stone's license was suspended for two reasons and Stone cannot plausibly argue that the disciplinary history he acknowledges in his complaint was irrelevant to the suspension decision. And Stone also does not plausibly allege a violation of § 525(a) because he stipulated to the disciplinary

24

conditions that he then violated.[9]

### C. Stone does not explain how the bankruptcy court abused its discretion by denying leave to amend.

Concluding that amendment would be futile, the bankruptcy court did not grant Stone leave to amend his amended complaint. Although "leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *see* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").[10]

On appeal, Stone simply states that the bankruptcy court should have given him leave to amend. At no point does he argue how the bankruptcy court abused its discretion. We conclude that he has abandoned any argument on the point. *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th

---

[9] The bankruptcy court also concluded that the amended complaint failed to allege a violation of the discharge injunction: "Similarly, there is no basis for finding an actionable violation of Section 524(a)(2)." Mem. Dec. at 10. In his opening appellate brief, Stone withdraws any question about the bankruptcy court's § 524(a)(2) decision.

[10] Otherwise, we "consider five factors in assessing whether a district court abuses its discretion in dismissing a complaint without leave to amend: 'bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.' " *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)).

Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); Fed. R. Bankr. P. 8014(a)(8). Perhaps most importantly, Stone does not explain how he would amend the complaint to cure its defects. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Accordingly, we conclude that the bankruptcy court did not abuse its discretion when it denied Stone leave to amend.

## CONCLUSION

Based on the foregoing, we AFFIRM.